Peter Chika ECHE and Perry
Po–Sheung Lo, Plaintiffs,

v.

Eric HOLDER, Janet Napolitano,
David Gulick, Walter L. Haith,
and Susan Teruya, Defendants.

Civil Case No. 010–00013.

United States District Court,
D.N. Mariana Islands.

Oct. 7, 2010.

Peter Chika Eche, Barrigada, GU, pro se.

Perry Po–Sheung Lo, Saipan, MP, pro se.

Mikel W. Schwab, United States Attorney's Office, Hagatna, GU, Samuel Go, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, Jessica F. Cruz, U.S. Attorney's Office, District of Guam, Hagatna, GU, for Defendant.

## ORDER

PHILIP M. PRO, District Judge.

Presently before the Court is Plaintiffs' Motion for Summary Judgment (Doc. # 10), filed on June 28, 2010. Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint, Opposition to Plaintiffs' Motion for Summary Judgment and Cross–Motion for Summary Judgment (Doc. # 16) on August 2, 2010. Plaintiffs filed an Opposition to Defendants' Motion to Dismiss (Doc. # 20) on August 9, 2010. Defendants filed a Reply (Doc. # 22) on August 19, 2010. Plaintiffs filed a Reply (Doc. # 23) on August 20, 2010. The Court held a hearing on these motions on September 30, 2010.

Plaintiffs Peter Eche ("Eche") and Perry Po–Sheung Lo ("Lo") are lawful permanent residents living in the Commonwealth for the Northern Mariana Islands ("CNMI") and bring this action pro se to petition the Court for a judicial hearing on their naturalization applications which the U.S. Citizenship and Immigration Services ("USCIS") denied. USCIS denied the applications based on its conclusion that Plaintiffs' residence in the CNMI did not count for the physical presence requirement for a lawful permanent resident to naturalize, and constituted absence from the United States which disrupted the con-

tinuous residence requirement to naturalize.

Plaintiffs now move for summary judgment, arguing that the Consolidated Natural Resources Act of 2008 ("CNRA") provides that residence in the CNMI, before and after enactment, counts as residence in the United States. Defendants move to dismiss, oppose summary judgment, and countermove for summary judgment. Defendants argue the Court lacks jurisdiction under the statute pursuant to which Plaintiffs invoke jurisdiction. Defendants also argue Plaintiffs failed to exhaust their administrative remedies because they did not appeal denial of their naturalization applications. On the merits, Defendants contend Plaintiffs misconstrue the CNRA. According to Defendants, the CNRA makes presence in the CNMI presence in the United States only for the purpose of avoiding abandonment of lawful permanent residence status due to absence from the United States. Defendants contend the amendment does not alter the prior rule that presence in the CNMI does not constitute presence or residency in the United States for naturalization purposes.

## I. JURISDICTION AND FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

■ In the First Amended Complaint, Plaintiffs identify 8 U.S.C. § 1447(b) as a basis for jurisdiction. Defendants challenge this basis for jurisdiction, arguing that section applies only if the USCIS has not rendered a decision on a naturalization petition within 120 days of the examination of the petitioner. Defendants rendered decisions on Plaintiffs' naturalization applications within the 120–day period, and Defendants thus contend the Court lacks jurisdiction under § 1447(b).

Title 8 U.S.C. § 1447(b) provides that if the USCIS fails to make a determination on a naturalization petition within 120 days

after the date on which the examination is conducted, "the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." The court to which application is made "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b).

Here, Plaintiffs are not seeking court review where the USCIS has failed to make a determination of the matter within 120 days of their examinations. Rather, Plaintiffs are seeking review of issued naturalization decisions. Section 1447(b) does not apply, and does not provide jurisdiction in this matter.

However, as Defendants appear to concede in their reply brief, the Court has jurisdiction under the Administrative Procedures Act ("APA"), which Plaintiffs also cite in their First Amended Complaint as support for this Court's jurisdiction. (First Am. Compl. (Doc. # 9) at 5.) The APA provides for judicial review of agency actions causing legal wrongs or adversely affecting a person within the meaning of a relevant statute. 5 U.S.C. § 702. Under the APA, the reviewing court may compel agency action unlawfully withheld, and may set aside "agency action, findings, and conclusions" which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706.

Judicial review under the APA is limited to either review specifically authorized in a substantive statute, or "final agency action for which there is no other adequate remedy in a court." *Id.* § 704. The "form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action...." *Id.* § 703.

■ The statutes related to naturalization provide for judicial review under specified procedures. *See* 8 U.S.C. § 1447(a), 1421(c). Thus, under the APA, those are the procedures which an aggrieved applicant must use to obtain judicial review. *See* 5 U.S.C. § 703; 8 U.S.C. § 1421(c) (providing that aggrieved naturalization applicant may seek judicial review "in accordance with chapter 7 of title 5").

Pursuant to 8 U.S.C. § 1447(a), if USCIS denies an application for naturalization, "the applicant may request a hearing before an immigration officer." If the applicant is dissatisfied with the hearing officer's determination, the applicant "may seek review of such denial before the United States district court for the district in which such person resides...." 8 U.S.C. § 1421(c). The procedure set forth in the applicable statutes is the applicant's exclusive means of obtaining naturalization. *Id.* § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise."). Consequently, an applicant must exhaust his administrative remedies as provided in the applicable statutory scheme prior to bringing suit. *See United States v. Hovsepian,* 359 F.3d 1144, 1162 n. 15 (9th Cir.2004) ("Unsuccessful applicants must first take an administrative appeal of the denial and complete the INS's administrative process before seeking judicial review.").

Under the applicable regulations, an applicant "may request a hearing on the denial of the applicant's application for naturalization by filing a request with the Service within thirty days after the applicant receives the notice of denial." 8 C.F.R. § 336.2(a). A reviewing officer then conducts a review within 180 days from the date the appeal is filed. *Id.* § 336.2(b). The USCIS will reject an untimely request for hearing unless it meets the requirements for a motion to reopen or to reconsider. *Id.* § 336.2(c)(2).

■ Here, neither Plaintiff formally appealed the initial denial of their naturalization applications to a hearing officer. (Defs.' Mem of P. & A. (Doc. # 17), Ex. A.) Plaintiffs contend they nevertheless exhausted their administrative remedies because USCIS employees dissuaded them from appealing. Additionally, Plaintiffs contend they communicated, either directly or indirectly, with USCIS officials about their cases, and those officials reviewed the decisions and affirmed them.

USCIS issued its decisions denying Plaintiffs' applications on December 11, 2009. (*Id.*) Both decisions informed Plaintiffs they had thirty days to appeal, and that if they did not appeal, the decisions would be final. (*Id.*)

Plaintiff Lo received the denial letter on approximately December 22, 2009, and asked a friend to assist him. (Pls.' Opp'n to Defs.' Mot. Dismiss (Doc. # 20), Decl. of Perry Po–Sheung Lo.) That friend electronically communicated with Defendant David Gulick ("Gulick"), District Director of USCIS, in late December 2009. (*Id.* & Attach. 11.) Gulick confirmed the denial decision was correct. (*Id.*) On January 10, 2010, Lo's friend then asked Gulick whether the applicant (he did not identify Lo by name) should "formally appeal the decision, or just file at the earlier time?" (*Id.*) The next day, Gulick responded "[f]ile at the earlier time." (*Id.*)

Plaintiff Eche likewise received his denial letter around December 22, 2009. (Pls.' Opp'n to Defs.' Mot. Dismiss, Decl. of Peter Eche.) Eche avers that when he "got a clearer understanding of what the Law said," he appealed the denial to USCIS Field Office Director Walter Haith ("Haith") through electronic communications. (*Id.*) Eche's communications with

Haith are dated April and May 2010. (*Id.*, Attachs. 6, 9, 10.)

In the April 2010 communications with Haith, Haith indicates that he "will review the case." (*Id.*, Attach. 6.) In further email communications in May 2010, Haith inquires of Eche:

> Can your [sic] provide me with an explanation as to why you did not file Form N–336 (Request for a hearing on a Decision in Naturalization Proceedings) within the allotted time frame (30 days)[?] This Form was sent with the denial. That would have been the proper way to appeal your denial.

(*Id.*, Attach. 10.) Eche responded he did not appeal because a USCIS employee told him the denial decision was correct. (*Id.*) Haith sent Eche a formal letter on May 13, 2010, in which he states that he reviewed Eche's file, and that the "decision to deny your application for naturalization remains unchanged." (Pls.' Mot. Summ. J., Attach. 3.) Haith also noted that the—

> proper avenue for USCIS to reconsider the decision made on your application would have been for you to have timely filed Form N–336, Request for a Hearing on a Decision in Naturalization Proceedings (Under Section 336 of the INA), which was included with the denial notice. Since you did not timely file Form N–336, you may file a new Form N–400, Application for Naturalization, when you meet all the requirements.

(*Id.*)

Plaintiffs did not follow the procedure outlined in the statutes and regulations. Plaintiff Lo did not formally appeal, and even his informal appeal through a friend did not mention Lo's name, at least not so far as the exhibits before the Court show. Eche did not timely appeal, as his informal communications with Haith did not commence until well after the thirty day period to appeal expired.

However, the purpose of requiring exhaustion of administrative remedies is "to allow the administrative agency in question to exercise its expertise over the subject matter and to permit the agency an opportunity to correct any mistakes that may have occurred during the proceeding, thus avoiding unnecessary or premature judicial intervention into the administrative process." *'Ilio'ulaokalani Coalition v. Rumsfeld,* 464 F.3d 1083, 1107 (9th Cir.2006) (quotation omitted). Lo had a friend contact the USCIS district director on his behalf within days of Lo receiving the denial letter. Gulick reviewed the merits of the denial decision and confirmed the denial was correct. When Lo's friend asked Gulick whether Lo should appeal, Gulick advised him not to do so, even though the time within which Lo could appeal had not expired.

As to Eche, even if his electronic communications with Haith are considered an appeal, he did not initiate those communications until April 2010, well beyond the 30 day time limit for filing an appeal. However, Eche explains that he did not appeal earlier because a USCIS employee advised him not to do so. Further, Haith treated the communications as an appeal, issuing a formal denial letter in May 2010.

The USCIS advised Plaintiffs not to appeal, and then treated their informal communications, whether timely or not, as appeals and gave responses on the merits to those communications. While Plaintiffs did not technically comply with the statutory and regulatory requirements for appeal, they sought and obtained USCIS review of their denials on the merits. The USCIS thus had the opportunity to exercise its expertise and to correct any errors made in Plaintiffs' naturalization proceedings. The Court concludes Plaintiffs adequately have exhausted their administrative remedies. The Court therefore will

deny Defendants' motion to dismiss for lack of jurisdiction and for failure to exhaust administrative remedies.

## II. MERITS

▮ The parties' dispute centers around the residency, physical presence, and absence from the United States provisions in relation to the naturalization requirements as they apply to lawful permanent residents [1] residing in the CNMI. The Court reviews a naturalization denial de novo. *See* 8 U.S.C. § 1421(c).

Title 8 U.S.C. § 1427(a) sets forth the residency and presence requirements for naturalization:

No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

Consequently, to qualify for naturalization, an applicant must establish, among other things, that he:

. . .

(2) Has been lawfully admitted as a permanent resident of the United States;

(3) Has resided continuously within the United States, as defined under § 316.5, for a period of at least five years after having been lawfully admitted for permanent residence;

(4) Has been physically present in the United States for at least 30 months of the five years preceding the date of filing the application;

(5) Immediately preceding the filing of an application, or immediately preceding the examination on the application if the application was filed early pursuant to section 334(a) of the Act and the three month period falls within the required period of residence under section 316(a) or 319(a) of the Act, has resided, as defined under § 316.5, for at least three months in a State or Service district having jurisdiction over the applicant's actual place of residence, and in which the alien seeks to file the application; [and]

(6) Has resided continuously within the United States from the date of application for naturalization up to the time of admission to citizenship. . . .

8 C.F.R. § 316.2. Pursuant to 8 U.S.C. § 1101(a)(33), an alien's residence is "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." *See also* 8 C.F.R. § 316.5(a).

Section 1427(b) explains when an applicant's absence from the United States will break the continuous residency requirement in subsection (a):

---

**1.** Lawful permanent residence means "the status of having been lawfully accorded the privilege of residing permanently in the Unit-

ed States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C.A. § 1101(a)(20).

Absence from the United States of more than six months but less than one year during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the application for naturalization, or during the period between the date of filing the application and the date of any hearing under section 1447(a) of this title, shall break the continuity of such residence, unless the applicant shall establish to the satisfaction of the Attorney General that he did not in fact abandon his residence in the United States during such period.

Absence from the United States for a continuous period of one year or more during the period for which continuous residence is required for admission to citizenship (whether preceding or subsequent to the filing of the application for naturalization) shall break the continuity of such residence, [except in certain circumstances not relevant here].

*See also* 8 C.F.R. § 316.5(c).

■ These usual rules for naturalization are impacted by the unique political arrangement between the United States and the CNMI. In 1975, the United States and the CNMI signed the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"). *United States v. De Leon Guerrero*, 4 F.3d 749, 751 (9th Cir.1993); *see also* 48 U.S.C. § 1801 (setting forth the Covenant's text in the note thereto). "The Covenant has created a 'unique' relationship between the United States and the CNMI, and its provisions alone define the boundaries of those relations." *De Leon Guerrero*, 4 F.3d at 754.

Under section 503(a) of the Covenant as originally enacted, the United States' im-migration and naturalization laws did not apply to the CNMI. However, section 506 of the Covenant set forth certain exceptions to this general rule and provided that for the specified purposes only, the CNMI "will be deemed to be a part of the United States under the Immigration and Nationality Act ... and the said Act will apply to the [CNMI] to the extent indicated in each of the following Subsections of this Section." Among the exceptions was one for aliens who are immediate relatives of United States citizens who are permanently residing in the CNMI. Pursuant to section 506(c), for aliens who are immediate relatives of a United States citizen who is permanently residing in the CNMI,

all the provisions of the said Act will apply, commencing when a claim is made to entitlement to "immediate relative" status. A person who is certified by the Government of the Northern Mariana Islands both to have been a lawful permanent resident of the Northern Mariana Islands and to have had the "immediate relative" relationship denoted herein on the effective date of this Section will be presumed to have been admitted to the United States for lawful permanent residence as of that date without the requirement of any of the usual procedures set forth in the said Act. For the purpose of the requirements of judicial naturalization, the Northern Mariana Islands will be deemed to constitute a State as defined in Subsection 101(a) paragraph (36) of the said Act. The Courts of record of the Northern Mariana Islands and the District Court for the Northern Mariana Islands will be included among the courts specified in Subsection 310(a) of the said Act and will have jurisdiction to naturalize persons who become eligible under this Section and who reside within their respective jurisdictions.[2]

---

**2.** The Court thus rejects Plaintiffs' argument that the Covenant as originally enacted did

Given the interplay between the immigration laws and the Covenant, the General Counsel's Office of the United States Department of Justice issued an opinion indicating that "[a]n alien who has been admitted to the United States as a lawful permanent resident, but who is not an immediate relative, may not accrue residence for purposes of naturalization by residing in the CNMI." Genco. Op. 94–10, 1994 WL 1753115 (Feb. 9, 1994) (citing Genco. Op. 89–48).

In 2008, Congress passed the Consolidated Natural Resources Act of 2008 ("CNRA"), which amended the Covenant. The CNRA deleted from the Covenant that portion of section 503(a) which made the United States' immigration laws inapplicable to the CNMI. Consolidated Natural Resources Act of 2008, Pub.L. 110–229 § 702, 122 Stat. 754, 854–855 (2008). To effectuate the change in the U.S. immigration laws becoming applicable to the CNMI, the CNRA created a transition period during which the Secretary of Homeland Security must establish, administer, and enforce a transition program to regulate immigration to the Commonwealth. *Id.* Following the CNRA's enactment, the immigration laws now define the terms "state" and "United States" to include the CNMI. 8 U.S.C. § 1101(a)(36), (a)(38).

The CNRA also contained the following provisions regarding the CNRA's effective date:

(a) IN GENERAL.—Except as specifically provided in this section or otherwise in this subtitle, this subtitle and the amendments made by this subtitle shall take effect on the date of enactment of this Act.

(b) AMENDMENTS TO THE IMMIGRATION AND NATIONALITY ACT.—The amendments to the Immigration and Nationality Act made by this subtitle, and other provisions of this subtitle applying the immigration laws (as defined in section 101(a)(17) of Immigration and Nationality Act (8 U.S.C. 1101(a)(17))) to the Commonwealth, shall take effect on the transition program effective date described in section 6 of Public Law 94–241 (as added by section 702(a)), unless specifically provided otherwise in this subtitle.

(c) CONSTRUCTION.—Nothing in this subtitle or the amendments made by this subtitle shall be construed to make any residence or presence in the Commonwealth before the transition program effective date described in section 6 of Public Law 94–241 (as added by section 702(a)) residence or presence in the United States, except that, for the purpose only of determining whether an alien lawfully admitted for permanent residence (as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20))) has abandoned or lost such status by reason of absence from the United States, such alien's presence in the Commonwealth before, on, or after the date of enactment of this Act shall be considered to be presence in the United States.

Consolidated Natural Resources Act of 2008, Pub.L. 110–229 § 705, 122 Stat. 754, 867 (2008).

---

not speak to the status of lawful permanent residents. Under section 503(a) of the Covenant, the default rule in the CNMI was that the United States' immigration laws, including provisions relating to lawful permanent residents, would not apply. Pursuant to section 506(a), the CNMI was part of the United States, and the United States' immigration laws applied, only for the specific purposes set forth in section 506, none of which provided for preserving lawful permanent resident status or residency for naturalization purposes for aliens in the CNMI absent immediate relative status.

The parties' dispute centers on the meaning of section 705(c) of the CNRA. Plaintiffs contend that the language means that residence in the CNMI satisfies the naturalization residency requirements before, on, or after the date of enactment of the CNRA. Plaintiffs thus contend that because they lived in the CNMI for five years prior to their applications for naturalization, that residency counts as residency and presence in the United States for naturalization purposes. Plaintiffs contend that by considering residency in the CNMI only for purposes of absence from the United States, and not also for naturalization purposes, the USCIS is adding a requirement to naturalize not contained in any statute or regulation. *See Kazarian v. U.S. Citizenship & Immigration Servs.*, 596 F.3d 1115, 1121 (9th Cir.2010) ("neither USCIS nor an AAO may unilaterally impose novel substantive or evidentiary requirements beyond those set forth [in the applicable regulation]").

Defendants contend that the plain language of section 705(c) states that residence in CNMI counts before, on, or after enactment of the CNRA only for purposes of determining whether a lawful permanent resident abandoned or lost his lawful permanent resident status by reason of absence from the United States. However, the CNRA does not provide that a lawful permanent resident's residence in the CNMI satisfies the presence or residency requirements for naturalization.

▪ "The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute." *Cooper v. F.A.A.*, 622 F.3d 1016, 1028 (9th Cir.2010) (quotation omitted). To determine congressional intent, the Court begins with statutory language's plain meaning. *Id.* "If the relevant language is plain and unambiguous, [the Court's] task is complete." *Id.* To determine plain meaning, the Court gives words "their ordinary, contemporary, common meaning." *Id.* (quotation omitted). If the statutory language is ambiguous, the Court examines the language "in its statutory context, looking to the language of the entire statute, its structure, and purpose." *Id.* at 1029. If the plain meaning and statutory context analyses do not provide guidance, the Court may consult "extrinsic materials, such as legislative history, for guidance in construing an ambiguous statute." *Id.* at 1031. "When Congress includes a provision in one part of a statute but excludes it in another, [the Court] deem[s] the difference intentional and assign[s] meaning to the omission." *Solomon v. Interior Reg'l Housing Auth.*, 313 F.3d 1194, 1199 (9th Cir.2002).

▪ The CNRA's plain language limits the provision that an alien's presence in the Commonwealth "before, on, or after" the Act's enactment counts as presence in the United States "for the purpose only of determining whether an alien lawfully admitted for permanent residence ... has abandoned or lost such status by reason of absence from the United States."[3] The CNRA preserves the lawful permanent resident status of any such alien who resided in the CNMI before, on, or after enactment of the CNRA. Thus, Plaintiffs have not lost their lawful permanent resident status by living in the CNMI.

**3.** A lawful permanent resident may lose his status as a lawful permanent resident if he leaves the United States for more than a temporary visit abroad. *See Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006 (9th Cir.2003) ("Khodagholian sought to re-enter the United States as a returning resident alien. To qualify for such re-entry, he must be returning to an unrelinquished lawful permanent residence after a temporary visit abroad." (quotations omitted)).

However, the CNRA limited the "before, on, or after" language to this purpose only. Thus, by its plain terms, the CNRA did not provide that residency in the CNMI counts as continuous residency in the United States or physical presence in the United States for purposes of the naturalization requirements. The CNRA does not refer to naturalization, it refers only to whether a lawful permanent resident loses his status as a lawful permanent resident by leaving the United States.

Congress's intent to limit the application of the "before, on, or after" provision to the specified purpose is demonstrated by the statutory language. The first part of the provision states that nothing in the Act shall be construed to make "residence or presence" in the CNMI "residence or presence" in the United States. The second part of the provision states that "presence" in the Commonwealth before, on, or after the date of enactment of this Act shall be considered to be "presence" in the United States. The second part omits the reference to "residence" contained in the first part of the provision. Had Congress intended the "before, on, or after" provision to apply to the residency requirements for naturalization, the second part of the provision would have stated that "residence or presence" in the CNMI would count as "residence or presence" in the United States. That the "before, on, or after" provision omits the word "residence" is intentional, and the Court must give it meaning. Consequently, section 705(c)'s plain language limits the application of the "before, on, or after" provision to determining whether a lawful permanent resident abandoned or lost his status as such, but does not apply to the naturalization residency requirements.

Plaintiffs' proposed interpretation of section 705(c) is not without force because the naturalization requirements are based in part on the residency and physical presence of a lawful permanent resident in the United States, and whether the lawful permanent resident has abandoned that status. The CNRA provides that a lawful permanent resident is present in the United States by residing in the CNMI. Arguably, that same presence should satisfy the residency and physical presence requirements under the naturalization provisions.

Nevertheless, the Court must reject Plaintiffs' interpretation. To the extent the relationship between residency for maintaining lawful permanent residence status and residency for naturalization purposes creates some ambiguity in section 705(c)'s meaning, in the absence of other guiding authority, the Court concludes the statute's plain language and structure control. Congress chose to narrowly confine for what purpose presence in the CNMI would count "before, on or after" the date of the CNRA's enactment. Congress limited the "before, on, or after" clause to a specified purpose only, and the Court finds no basis to conclude Congress meant anything other than what it said. Congress could have made it explicit that presence in the CNMI would count toward the residency and physical presence requirements for naturalization, but it did not do so. The Court therefore will deny Plaintiffs' motion for summary judgment and will grant Defendants' motion for summary judgment.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. # 10) is hereby DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, Opposition to Plaintiffs' Motion for Summary Judgment and Cross–Motion for Summary Judgment (Doc. # 16) is hereby GRANTED in part and DENIED in part. The motion to

dismiss is denied. The motion for summary judgment is granted.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendants and against Plaintiffs.