**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PETER ECHE, Ph. D.; PERRY PO-
SHEUNG LO,
  *Plaintiffs-Appellants,*

v.

ERIC H. HOLDER, Jr., Attorney
General; JANET A. NAPOLITANO,
Secretary, Department of
Homeland Security; DAVID GULICK,
USCIS District Director; WALTER
L. HAITH, USCIS District 26 Field
Office Director; SUSAN TERUYA,
USCIS Immigration Officer,
  *Defendants-Appellees.*

No. 10-17652

D.C. No.
1:10-cv-00013

OPINION

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Philip M. Pro, District Judge, Presiding

Argued and Submitted
June 12, 2012—Honolulu, Hawaii

Filed September 11, 2012

Before: Mary M. Schroeder, Consuelo M. Callahan, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Schroeder

## COUNSEL

Michael A. Brodsky, Capitola, California, for plaintiffs-appellants Peter Eche, et al.

Samuel P. Go, Washington, D.C., for defendants-appellees Eric H. Holder, Attorney General, et al.

## OPINION

SCHROEDER, Circuit Judge:

Lawful permanent residents of the United States (LPRs) who apply for naturalization as United States citizens must show, inter alia, that they have resided in the United States continuously for five years. *See* 8 U.S.C. § 1427(a)(1); 8 C.F.R. § 316.2(a)(3)-(4). Each of the two Plaintiffs-Appellants in this case had resided for several years in the Commonwealth of the Northern Mariana Islands (CNMI), a territory of the United States, when federal immigration law replaced CNMI immigration law there in 2009. The issue we must decide in this appeal is whether the time plaintiffs resided in the CNMI before the 2009 transition date counts toward the five-year residence requirement for naturalization. The district court held in a published decision that the time does not count. *Eche v. Holder*, 742 F. Supp. 2d 1136, 1141-45 (D.N.M.I. 2011). That is the correct answer under the clear language of the controlling statute, and we affirm.

## STATUTORY BACKGROUND

When Congress in 1976 approved the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States (Covenant), citizens of the CNMI became citizens of the United States. *See* Covenant, Pub. L. No. 94-241, § 301, 90 Stat. 263, 265-66. The CNMI government, however, retained nearly exclusive control over immigration to the territory. *See id.* § 503(a), 90 Stat. at 268. Over time, the CNMI government permitted a massive influx of temporary "guest workers" from Asia to work in the territory's factories, which were devoted principally to textile and clothing manufacture. *See Sagana v. Tenorio*, 384 F.3d 731, 734-35 (9th Cir. 2004). While CNMI law authorized the guest workers' presence, United States law did not extend the workers any federal immigration status. *See id*. Thus LPRs of the United States could not count time spent living in the

CNMI toward federal naturalization requirements unless they had a US-citizen immediate relative also living in the CNMI. *See* Covenant § 506(c), 90 Stat. at 269; *see also* General Counsel Opinion, No. 94-10, 1994 WL 1753115 at *4 (INS, Feb. 9, 1994).

In 2009 this situation changed when the Consolidated Natural Resources Act of 2008 (CNRA), Pub. L. No. 110-229, 122 Stat. 754 (2008), became effective. That statute and its implementing regulation made federal immigration law applicable to the CNMI beginning on November 28, 2009. *See* 48 U.S.C. § 1806(a)(1); Commonwealth of the Northern Mariana Island Transitional Worker Classification, 74 Fed. Reg. 55094 (Oct. 27, 2009). The CNRA divested territorial officials' authority to administer immigration law and policy, and gave the authority to officers of the United States government. *See* CNRA § 702, 122 Stat. at 854-55. The statute also made the CNMI part of the United States within the meaning of the Immigration and Nationality Act. *See id.*, 122 Stat. at 866; 8 U.S.C. § 1101(a)(36), (a)(38). LPRs of the United States may therefore now count time they reside in the CNMI toward the residence requirement for naturalization as United States citizens. The plaintiffs in this case, however, wish to count time they lived in the CNMI before the transition.

## PROCEDURAL BACKGROUND

The Plaintiffs-Appellants are Peter Eche and Perry Po-Sheung Lo. Each became a permanent resident of the United States and each later moved to the CNMI before the CNRA transition date. Eche, a Nigerian citizen, entered the United States at Seattle and was admitted as an LPR in September 2004 as the immediate family member of his United States citizen father. He moved to the CNMI in January 2005, and his father apparently remained in the continental United States. Lo, a Chinese citizen, was admitted as an LPR in February 1989 as the immediate family member of his United

States citizen sister. He lived in the CNMI between October 2000 and 2009 with no citizen immediate family member.

Both Eche and Lo filed applications in the CNMI to naturalize as United States citizens and appeared for examination in late 2009. The United States Citizenship and Immigration Service (USCIS) rejected both applications on the ground that their pre-transition date residence did not count. The agency said that if the LPRs had no US-citizen immediate relative also living in the CNMI, the residence before the November 28, 2009 transition date "cannot be counted as residence in the United States for naturalization purposes."

Eche and Lo together then filed this suit *pro se* in the District Court for the Northern Mariana Islands. The district court treated the action as one to review the agency's denial of plaintiffs' naturalization applications, so the court exercised jurisdiction pursuant to 8 U.S.C. § 1447(a). It held on the merits that CNRA did not permit the plaintiffs to count toward the requirements for naturalization the time they resided in the CNMI before CNRA's effective date. *See Eche*, 742 F. Supp.2d at 1141-45. The court therefore granted summary judgment for the government.

Eche and Lo filed this timely appeal, and this court appointed pro bono counsel. All parties agree there are no material issues of fact and the critical issue is one of statutory interpretation.

The district court also held that Eche and Lo had exhausted administrative remedies. Eche and Lo had explored the possibilities for review of the denials, but were discouraged from filing formal appeals. Assuming the district court's conclusion was incorrect, there is no jurisdictional bar to our considering their appeal on the merits. This is because the statutory provision for review of the agency's denial of naturalization applications is permissive, rather than mandatory. It provides a denied applicant "after a hearing before an immigration offi-

cer . . . may seek review of such denial before the United States district court." 8 U.S.C. § 1421(c). That section does not contain the "sweeping and direct jurisdictional mandate" that the Supreme Court and we have required before concluding an exhaustion requirement is jurisdictional. *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1040 (9th Cir. 2011). The requirement is thus prudential, not jurisdictional. We exercise our discretion to decide Eche and Lo's appeal on the merits. Their case presents unusual circumstances: they were told repeatedly that they should not pursue an administrative appeal because it would be futile. The government is thus in no position to fault them for failing to appeal. *See Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004) (failure to exhaust may be waived when "administrative appeal would be futile").

## THE STATUTORY MEANING

The relevant language of the CNRA was intended to clarify the legal effect of residence and presence in the CNMI before the 2009 transition from CNMI immigration law to federal immigration law. Section 705 provides in pertinent part:

> (a) IN GENERAL.—Except as specifically provided in this section or otherwise in this subtitle, this subtitle and the amendments made by this subtitle shall take effect on the date of enactment of this Act.

> (b) AMENDMENTS TO THE IMMIGRATION AND NATIONALITY ACT.—The amendments to the Immigration and Nationality Act made by this subtitle, and other provisions of this subtitle applying the immigration laws (as defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))) to the Commonwealth, shall take effect on the transition program effective date described in section 6 of Public Law 94-241 (as

added by section 702(a) [of CNRA]), unless specifi-
cally provided otherwise in this subtitle.

(c) CONSTRUCTION.—Nothing in this subtitle or
the amendments made by this subtitle shall be con-
strued to make any residence or presence in the
Commonwealth before the transition program effec-
tive date described in section 6 of Public Law
94-241 (as added by section 702(a) [of CNRA]) resi-
dence or presence in the United States, except that,
for the purpose only of determining whether an alien
lawfully admitted for permanent residence (as
defined in section 101(a)(20) of the Immigration and
Nationality Act (8 U.S.C. 1101(a)(20))) has aban-
doned or lost such status by reason of absence from
the United States, such alien's presence in the Com-
monwealth before, on, or after the date of enactment
of this Act shall be considered to be presence in the
United States.

CNRA § 705, 122 Stat. at 867 (codified at 48 U.S.C. § 1806
note). The district court interpreted subsection (c) to mean
that an LPR of the United States may not count pre-transition
time in the CNMI toward the naturalization requirements,
except for the limited purpose of determining abandonment,
i.e., whether an LPR "loses his status . . . by leaving the
United States." *Eche*, 742 F. Supp. 2d at 1145. An LPR who
lived in the CNMI before the transition date would not have
abandoned LPR status, but could not count the time in the
CNMI toward citizenship qualification. The court thus con-
cluded that under the controlling plain language, Eche and Lo
did not qualify for naturalization.

   **[1]** Eche and Lo's principal argument on appeal is that the
first and operative clause of CNRA § 705(c) was intended to
prevent only temporary guest workers from counting their res-
idence in the CNMI. The statute does not say that, however.
It has blanket language. The statute says it should not be con-

strued to make "any residence or presence" in the CNMI, before the effective date, "residence or presence in the United States." Section 705(c) thus does not distinguish between temporary guest workers and LPRs. All categories of aliens are encompassed.

[2] There is one narrow exception. The exception in the second clause permits an alien to count presence in the CNMI as presence in the United States for the limited purpose of determining whether the alien has lost or abandoned LPR status. § 705(c). The exception addresses the status abandonment doctrine, under which an alien with LPR status may lose or abandon such status by traveling abroad for more than a temporary visit. *See Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006 (9th Cir. 2003); *Khoshfahm v. Holder*, 655 F.3d 1147, 1151-52 (9th Cir. 2011). The exception therefore provides that an alien's time spent in the CNMI "before, on, or after the transition date," is not a loss or abandonment of LPR status. Beyond this, residence or presence in the CNMI before the transition date cannot count toward the naturalization requirements.

Eche and Lo offer still another strained interpretation of § 705(c) to count their time in the CNMI before the transition date. They ask us to interpret the phrase "such status" in the second clause as referring to presence in the United States, rather than to immigration status. They then insist that by living in the CNMI they were not abandoning their "status" of being present in the United States. Continuity of presence is relevant for purposes of determining whether an alien retains LPR status, because prolonged absence from the United States can disrupt continuity of presence. *See* 8 C.F.R. § 316.5(c). The statutory antecedent to the phrase "such status," however, is the status of having been admitted to lawful permanent residence. *See* 8 U.S.C. § 1101(a)(20) (defining LPR status). Presence is not an immigration "status."

[3] Congress thus clearly ensured that residence in the CNMI before United States immigration law became effective

would not count toward the residence required for naturalization as a United States citizen. The reason for this is apparent. Before CNRA's effective date, the CNMI government controlled and administered its own immigration law, applicable only to the CNMI. The territory admitted temporary guest workers and other aliens who lacked federal immigration status, and therefore were not eligible for adjustment of status under federal law. After CNRA's effective date, the Immigration and Nationality Act applied to the territory and the federal government took over administration of immigration law. *See* CNRA § 702. Congress thus provided, in § 705, that residence in the territory before federal immigration law applied was not residence in the United States.

**[4]** Eche and Lo nevertheless contend that we should interpret CNRA § 705(c) in their favor to preserve uniformity and to avoid a constitutional question under the Naturalization Clause of the Constitution. That clause provides Congress shall have the power "[t]o establish a uniform Rule of Naturalization . . . throughout the United States." U.S. Const., Art. I, § 8, cl. 4. Eche and Lo contend it requires CNMI naturalization law to have been the same as that in the States at all times.

The only support Eche and Lo offer for their argument is a century-old decision of this court, *United States v. Rodiek*, 162 F. 469 (9th Cir. 1908). The case involved a now-superceded requirement that applicants for naturalization declare intent to naturalize two years before applying to do so. The Organic Act for Hawaii, however, provided that an applicant who had lived in Hawaii for the prior five years could naturalize without having declared intent. *Id*. at 470; *see* Organic Act, April 30, 1900, c. 339, s. 100, 31 Stat. 141, 146. The same law had also organized Hawaii as an incorporated territory of the United States, explicitly extending the Constitution to the territory. *See Friend v. Reno*, 172 F.3d 638, 646 (9th Cir. 1999); Organic Act, s. 5, 31 Stat. at 141. Congress later repealed the Hawaii declaration exception. We therefore

held in *Rodiek* the district court should not have applied the special naturalization rule for Hawaii. 162 F. at 470-71. We observed in passing that the special territorial rule would have raised constitutional concerns had it not been repealed. *Id.* at 470.

Eche and Lo rely on this observation, but our decision in *Rodiek* did not turn on any constitutional issue. Moreover, because Hawaii was an incorporated territory, our observation about the Naturalization Clause must be read in that context. The CNMI is not an incorporated territory. While the Covenant is silent as to whether the CNMI is an unincorporated territory, and while we have observed that it may be some third category, the difference is not material here because the Constitution has "no greater" force in the CNMI "than in an unincorporated territory." *Comm. of Northern Mariana Islands v. Atalig*, 723 F.2d 682, 691 n.28 (9th Cir. 1984); *see Wabol v. Villacrusis*, 958 F.2d 1450, 1459 n.18 (9th Cir. 1990). The Covenant extends certain clauses of the United States Constitution to the CNMI, but the Naturalization Clause is not among them. *See* Covenant § 501, 90 Stat. at 267. The Covenant provides that the other clauses of the Constitution "do not apply of their own force," even though they may apply with the mutual consent of both governments. *Id.*

**[5]** The Naturalization Clause does not apply of its own force and the governments have not consented to its applicability. The Naturalization Clause has a geographic limitation: it applies "throughout the United States." The federal courts have repeatedly construed similar and even identical language in other clauses to include states and incorporated territories, but not unincorporated territories. In *Downes v. Bidwell*, 182 U.S. 244 (1901), one of the *Insular Cases*, the Supreme Court held that the Revenue Clause's identical explicit geographic limitation, "throughout the United States," did not include the unincorporated territory of Puerto Rico, which for purposes of that Clause was "not part of the United States." *Id.* at 287. The Court reached this sensible result because unincorporated

territories are not on a path to statehood. *See Boumediene v. Bush*, 553 U.S. 723, 757-58 (2008) (citing *Downes*, 182 U.S. at 293). In *Rabang v. I.N.S.*, 35 F.3d 1449 (9th Cir. 1994), this court held that the Fourteenth Amendment's limitation of birthright citizenship to those "born . . . in the United States" did not extend citizenship to those born in the Philippines during the period when it was an unincorporated territory. U.S. Const., 14th Amend., cl. 1; *see Rabang*, 35 F.3d at 1451. Every court to have construed that clause's geographic limitation has agreed. *See Valmonte v. I.N.S.*, 136 F.3d 914, 920-21 (2d Cir. 1998); *Lacap v. I.N.S.*, 138 F.3d 518, 519 (3d Cir. 1998); *Licudine v. Winter*, 603 F. Supp. 2d 129, 134 (D.D.C. 2009).

**[6]** Like the constitutional clauses at issue in *Rabang* and *Downes*, the Naturalization Clause is expressly limited to the "United States." This limitation "prevents its extension to every place over which the government exercises its sovereignty." *Rabang*, 35 F.3d at 1453. Because the Naturalization Clause did not follow the flag to the CNMI when Congress approved the Covenant, the Clause does not require us to apply federal immigration law to the CNMI prior to the CNRA's transition date.

**[7]** The district court correctly granted summary judgment on the merits to the government Defendants. Eche and Lo may, of course, submit new applications for naturalization once they have satisfied the statutory requirements.

**AFFIRMED**.