**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CATHERINE LOPENA TORRES,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 13-70653

Agency No.
A087-957-047

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 11, 2018
Honolulu, Hawaii

Filed June 12, 2019

Before:  Kim McLane Wardlaw, Marsha S. Berzon,
and Mark J. Bennett, Circuit Judges.

Opinion by Judge Wardlaw;
Concurrence by Judge Berzon

# SUMMARY[*]

### Immigration

Denying Catherine Lopena Torres's petition for review of a decision of the Board of Immigration Appeals, the panel concluded that, because it must follow the court's binding precedent involving immigrants residing in the Commonwealth of the Northern Mariana Islands (CNMI), Torres was removable and ineligible for cancellation of removal.

Torres, a native and citizen of the Philippines, entered the CNMI as a lawful guest worker at a time when the CNMI was enforcing its own immigration laws pursuant to a covenant between it and the United States establishing the CNMI as a Commonwealth of the United States. Effective November 28, 2009, U.S. immigration laws were imposed on the territory, but Congress enacted a two-year reprieve during which immigrants who had been lawfully present in the CNMI under CNMI law on the effective date would not be deported under 8 U.S.C. § 1182(a)(6)(A)(i) for not having been admitted or paroled into the United States.

In 2010, Torres was placed in removal proceedings, and the BIA determined that she was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien who "at the time of application for admission" lacked a "valid entry document." The BIA also concluded that she was ineligible for cancellation of removal.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that substantial evidence supported the BIA's decision that Torres was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). The panel explained that this court held in *Minto v. Sessions*, 854 F.3d 619 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1261 (2018), that although Congress's two-year reprieve protected immigrants like Torres from removability under 8 U.S.C. § 1182(a)(6)(A)(i) on the basis that they had not been admitted or paroled into the United States, it did not exempt them from removal based on other grounds of removability. Therefore, the reprieve offered Torres no protection from the charge that, under 8 U.S.C. § 1182(a)(7)(A)(i)(I), she was an immigrant who "at the time of application for admission" lacked a "valid entry document."

The panel concluded that substantial evidence also supported the BIA's determination that Torres failed to establish the ten years of continuous presence in the United States required for cancellation of removal. In so concluding, the panel explained that in *Eche v. Holder*, 694 F.3d 1026 (9th Cir. 2012), this court held that residence in the CNMI before U.S. immigration law became effective does not count toward the residence required for naturalization as a U.S. citizen.

Finally, the panel concluded that it lacked jurisdiction to consider Torres's request to remand her case to the agency to determine whether United States Citizenship and Immigration Services should grant her application for parole-in-place.

Concurring, Judge Berzon, joined by Judges Wardlaw and Bennett, wrote separately because she believes that *Minto v. Sessions* was wrongly decided. Judge Berzon wrote that *Minto* rendered meaningless Congress's grant, under

48 U.S.C. § 1806(e), of the two-year respite from removal for aliens present without admission or parole. Under *Minto*, Judge Berzon wrote, the very people ostensibly protected from removal by Congress were not actually protected— even if they could not be removed for lack of a valid entry, under *Minto* they were removable for lack of a valid entry *document*. Judge Berzon wrote that this holding requires a tortured definition of "application" for admission, disregards congressional intent, and, contrary to established canons of statutory interpretation, construes 48 U.S.C. § 1806(e) to be inoperative or superfluous, void or insignificant.

## COUNSEL

Stephen Carl Woodruff (argued), Saipan, Commonwealth of the Northern Mariana Islands; Janet H. King, King Law Offices, Saipan, Commonwealth of the Northern Mariana Islands; for Petitioner.

Lisa Damiano (argued) and William C. Minick, Trial Attorneys; Linda S. Wernery, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

WARDLAW, Circuit Judge:

Catherine Lopena Torres, a native and citizen of the Philippines who resides in the Commonwealth of the Northern Mariana Islands (CNMI), petitions for review of the Board of Immigration Appeals' (BIA) decision affirming an Immigration Judge's (IJ) determination that Torres was removable "as an intending immigrant without a . . . valid entry document," *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I), and that she was ineligible for cancellation of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252. Because we must follow our court's binding precedent in *Minto v. Sessions*, 854 F.3d 619 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1261 (2018), and *Eche v. Holder*, 694 F.3d 1026 (9th Cir. 2012), we deny Torres's petition for review.

**I.**

When Torres entered the CNMI in 1997, the CNMI was enforcing its own immigration laws pursuant to a covenant between it and the United States, establishing the CNMI as a Commonwealth of the United States. *See* Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (Covenant), Pub. L. No. 94-241, 90 Stat. 263 (1976) (joint resolution of Congress approving the Covenant). Torres entered as a lawful guest worker, and maintained that status up through November 28, 2009, the effective date of the Consolidated Natural Resources Act of 2008 (CNRA), Pub. L. No. 110-229, 122 Stat. 754 (codified in relevant part at 48 U.S.C. §§ 1806–1808), which imposed U.S. immigration laws, specifically the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101–1537, within the island territory. In an effort to insure that immigrants like Torres were not

unfairly penalized by the sudden imposition of U.S. immigration laws and that the CNMI economy would not be destabilized by the ensuing deportation of previously lawfully admitted guest workers, Congress enacted a two-year reprieve during which immigrants who had been lawfully present in the CNMI on the effective date would not be deported on the basis that they had not been admitted or paroled into the United States. 8 U.S.C. § 1182(a)(6)(A).

In 2010, the Department of Homeland Security (DHS) issued a Notice to Appear to Torres, charging her with removability both under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present without having been admitted or paroled, and under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who "at the time of application for admission" lacked a "valid entry document." The BIA concluded that Torres was an "applicant for admission" who lacked a valid entry document, that she was ineligible for cancellation of removal because she could not satisfy the requisite ten years of continuous residence in the United States, and that the agency lacked the power to grant her parole-in-place. It therefore affirmed the IJ's order of deportation against Torres.

## II.

We conclude that substantial evidence supports the BIA's decision that Torres is removable as charged.[1] As an

---

[1] Torres exhausted the arguments later decided in *Minto* before the agency. Although she did not fully raise her claims in her opening brief, she did so in her reply brief, and both she and the government were allowed to fully brief the issues in supplemental briefing. Thus, while we ordinarily do not consider arguments that are not presented in the appellant's opening brief, we do so here because Torres's failure to properly raise these arguments did not "prejudice" the government. *See*

initial matter, this court held in *Minto* that although Congress's two-year reprieve protected immigrants like Torres from removability on the basis that they had not been admitted or paroled into the United States, it did not exempt them from removal based on *other* grounds of removability set forth in the INA.  854 F.3d at 623, 625.  The reprieve, then, offered Torres no protection from the charge that she was an immigrant who "at the time of application for admission" lacked a "valid entry document."   8 U.S.C. § 1182(a)(7)(A)(i)(I).

In light of *Minto*, the BIA did not err in deeming Torres an applicant for admission as of the CNRA's effective date. In *Minto*, this court held that an immigrant "who was present in the CNMI without admission or parole on November 28, 2009, is 'deemed' to be 'an applicant for admission'" to the United States under 8 U.S.C. § 1225(a)(1).  *Minto*, 854 F.3d at 624.  This court further held that by virtue of Minto's mere presence in the CNMI, he was deemed to have made a continuing application for admission that did not terminate "until it was considered by the IJ."  *Id.*  Thus, under *Minto*, the BIA properly concluded that Torres was an applicant for admission, whose continuing application was before the agency.

Because Torres failed to submit any evidence demonstrating that she possessed a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the INA, the BIA

---

*Alcaraz v. I.N.S.*, 384 F.3d 1150, 1161 (9th Cir. 2004) (explaining that one of the "notable exceptions to" the court's rule that it will not consider arguments raised for the first time in the reply brief is "if the failure to raise the issue properly did not prejudice the defense of the opposing party").

properly determined that she was removable under 8 U.S.C.
§ 1182(a)(7)(A)(i)(I).

## III.

Substantial evidence also supports the BIA's
determination that Torres failed to carry her burden of
establishing ten years of continuous presence in the United
States. Construing § 705 of the CNRA, 122 Stat. at 867
(codified at 48 U.S.C. § 1806 note), we held in *Eche* that
"residence in the CNMI before United States immigration
law became effective" does not "count toward the residence
required for naturalization as a United States citizen."
694 F.3d at 1030. Torres does not dispute that she resided
in the CNMI from 1997 through 2010. Therefore, the BIA
properly concluded that she is ineligible for relief in the form
of cancellation of removal.

## IV.

The BIA correctly noted that although Torres applied for
parole-in-place, she presented no evidence that such status
had been granted. Torres asks us to remand her case to the
agency to determine whether United States Citizenship and
Immigration Services should grant her application for
parole-in-place under 8 U.S.C. § 1182(d)(5)(A), which
grants the Attorney General discretion to "parole into the
United States temporarily under such conditions as he may
prescribe only on a case-by-case basis for urgent
humanitarian reasons or significant public benefit any alien
applying for admission to the United States." Neither we nor
the agency has jurisdiction over this question. *See* 8 U.S.C.
§ 1182(d)(5)(A); 8 C.F.R. § 212.5(a); *Rodriguez v. Robbins*,
715 F.3d 1127, 1144 (9th Cir. 2013) ("The parole process is
purely discretionary and its results are unreviewable by
IJs."). As the BIA correctly stated, the "parole authority

under section 212(d)(5)(A) of the [INA] is delegated solely to the [DHS secretary] and is not within the jurisdiction of the [agency]."

**PETITION DENIED.**

---

BERZON, Circuit Judge, with whom Judge Wardlaw and Judge Bennett join, concurring:

Circuit precedent allows no other result, so I concur in the opinion. I write separately, however, because I believe that *Minto v. Sessions*, 854 F.3d 619 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1261 (2018), was wrongly decided.

A group of immigrants, of which Ms. Torres might be a part, resided legally in the Commonwealth of the Northern Mariana Islands ("CNMI") before November 28, 2009. On that date, their status was transformed overnight as the border of the United States' immigration authority passed, figuratively, over their homes. *See* Consolidated Natural Resources Act of 2008, Pub. L. No. 110-229 § 702, 122 Stat. 754, 854–64 (codified at 48 U.S.C. §§ 1806–1808). In recognition of the deeply destabilizing effect such a dramatic change would have on the CNMI and its inhabitants, Congress provided that "no alien who is lawfully present in the Commonwealth pursuant to the immigration laws of the Commonwealth on the transition program effective date shall be removed from the United States on the grounds that such alien's presence in the Commonwealth is in violation of section 212(a)(6)(A) of the Immigration and Nationality Act," until the noncitizen's authorization expired or two years after the effective date of transition. 48 U.S.C. § 1806(e)(1)(A). Section 212(a)(6)(A) makes inadmissible

"aliens present without admission or parole." 8 U.S.C. § 1182(a)(6)(A).

*Minto* renders meaningless Congress's grant of respite. Because of our ruling in that case, *every* immigrant who might otherwise have benefited from the two-year delay was nonetheless removable under section 212(a)(7)(A)(i)(I), which provides that "any immigrant at the time of application for admission . . . who is not in possession of a . . . valid entry document" is inadmissible. 8 U.S.C. § 1182(a)(7)(A)(i). The CNMI immigrants in question had taken no affirmative act to apply for admission to the United States on the effective date of consolidation or thereafter. Yet *Minto* noted that a noncitizen "who was present in the CNMI without admission or parole on November 28, 2009, is 'deemed' to be 'an applicant for admission'" to the United States under section 235, 8 U.S.C. § 1225(a)(1), and then assumed that every constructive "applicant" within the meaning of section 235(a)(1) must have made a putative (even though actually nonexistent) "application for admission" for purposes of section 212(a)(7)(A)(i)(I). *Minto*, 854 F.3d at 624. Any such individual in the CNMI who had not been admitted or paroled within the meaning of section 212(a)(6)(A) would also necessarily lack "a valid entry document" for purposes of section 212(a)(7)(A)(i)(I). As a result, it appears that under *Minto* the very people ostensibly protected from removal by Congress were not actually protected—even if they could not be removed for lack of a valid entry, under *Minto* they were removable for lack of a valid entry *document*.[1]

---

[1] *Minto* suggested that a visa program for CNMI workers would provide relief from section 212(a)(7)(A)(i)(I). *Minto*, 854 F.3d at 625. But that program was not available until October 7, 2011, nearly the end

This holding requires a tortured definition of "application," disregards congressional intent, and, contrary to established canons of statutory interpretation, construes 48 U.S.C. § 1806(e) to be "inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, *Statutes and Statutory Construction* § 46.06, at 181–86 (rev. 6th ed. 2000)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63–65, 174–79 (2012) (explaining presumption against ineffectiveness and the surplusage canon).

Under the Immigration and Nationality Act ("INA"), "applicant for admission" is a term of art denoting a particular legal status. 8 U.S.C. § 1225(a)(1). It does not mean an individual has made an actual application, since someone could be classified as an "applicant for admission" by way of their presence in the United States—as CNMI residents were—despite never having applied for admission. *See id. Minto* ignores a published BIA decision holding that the constructive status of being an "applicant for admission" under section 235(a)(1) does not mean that one is deemed to be "applying . . . for admission" for purposes of section 212(h), a provision contained in the same section as section 212(a)(7)(A)(i)(I), the relevant ground of removal. *Matter of Y-N-P-*, 26 I. & N. Dec. 10, 13 (B.I.A. 2012). Before *Minto*, we had determined that this precedential BIA opinion is worthy of deference. *Garcia-Mendez v. Lynch*,

---

of the two-year transition period and months after both Torres and Minto were ordered removed. *See* Commonwealth of the Northern Mariana Islands Transitional Worker Classification, 76 Fed. Reg. 55,501, 55,502 (Sept. 7, 2011) (to be codified at 8 C.F.R. pts. 103, 214, 274a, 299), https://www.govinfo.gov/content/pkg/FR-2011-09-07/pdf/2011-22622. pdf.

788 F.3d 1058, 1063–65 (9th Cir. 2015); *see also Arevalo v. U.S. Attorney Gen.*, 872 F.3d 1184, 1197 (11th Cir. 2017) (per curiam).

Finally, *Minto*—without acknowledgment, let alone justification—put this circuit's interpretation of the INA in tension with at least two other circuit courts. In 2013, years before *Minto*'s 2017 publication, the Eleventh Circuit held that section 212(a)(7) of the INA was inapplicable to undocumented individuals who "were not outside the United States seeking entry, but rather already in the United States and seeking an adjustment of status permitting them to remain." *Ortiz-Bouchet v. U.S. Att'y Gen.*, 714 F.3d 1353, 1356 (11th Cir. 2013) (per curiam). The Fifth Circuit agreed in 2016. *Marques v. Lynch*, 834 F.3d 549, 561 (5th Cir. 2016). This conflict highlights that *Minto*'s impact is not limited to the CNMI. So long as its holding regarding the meaning of "application for admission" stands, national immigration law will lack consistency.

Moreover, within our circuit, the government need *never* charge entry without admission under section 212(a)(6)(A), as any immigrant removable on that ground will also lack "a valid entry document" at "the time of [the fictional] application for admission" for purposes of section 212(a)(7)(A)(i)(I).

Of course, as a three-judge panel, we cannot overturn *Minto* absent superseding Supreme Court authority. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). For that reason, I respectfully concur.