**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCO GARCIA-MENDEZ,
*Petitioner*,

v.

LORETTA E. LYNCH, Attorney
General,
*Respondent*.

No. 12-73430

Agency No.
A077-975-209

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 8, 2015—Pasadena, California

Filed June 8, 2015

Before: Andrew J. Kleinfeld and Richard R. Clifton,
Circuit Judges and Richard Seeborg,[*] District Judge.

Opinion by Judge Seeborg

---

[*] The Honorable Richard Seeborg, United States District Judge for the Northern District of California, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Francisco Garcia-Mendez's petition for review of the Board of Immigration Appeals' denial of his application for special rule cancellation of removal for battered spouses.

The panel held that Garcia-Mendez was not entitled to seek an 8 U.S.C. § 1182(h)(2) waiver of inadmissibility in conjunction with his special rule cancellation application. The panel held that an alien does not meet the definition of a Violence Against Women Act "self-petitioner" by sole virtue of being an applicant for special rule cancellation. The panel further held that an applicant for special rule cancellation does not become eligible to seek a § 1182(h) waiver by virtue of that status.

### COUNSEL

Martin C. Fontes (argued), Law Office of Martin C. Fontes, APC, Santa Ana, California, for Petitioner.

Meadow D. Platt (argued), Trial Attorney, Stuart F. Delery, Acting Assistant Attorney General, and Greg D. Mack, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

SEEBORG, District Judge:

Francisco Garcia-Mendez petitions for review of an order by the Board of Immigration Appeals ("BIA") dismissing his challenge to a decision by an immigration judge ("IJ") denying his application for special rule cancellation of removal for battered spouses under 8 U.S.C. § 1229b(b)(2) ("special rule cancellation"). We are asked to determine whether Garcia-Mendez was entitled to seek a waiver of inadmissibility under 8 U.S.C. § 1182(h)(2) ("section 212(h)") in conjunction with his application for special rule cancellation. We conclude that his status as a special rule cancellation applicant did not render him eligible to pursue a section 212(h) waiver, nor did he qualify for such relief under any alternative approach. Accordingly, we deny Garcia-Mendez's petition for review.

## I.  FACTS

Garcia-Mendez, a native and citizen of Mexico, first entered the United States, without admission, in 1989. In 2001, the immigration authorities served Garcia-Mendez with a Notice to Appear, which alleged that he was removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. In May 2002, less than two weeks before his scheduled removal hearing, Garcia-Mendez married a United States citizen named Crystal Lopez.

On May 28, 2002, the immigration court in Los Angeles conducted a removal hearing. Garcia-Mendez, represented by counsel, conceded the allegations in the Notice to Appear

and admitted that he was subject to removal from the United States. Several months later, however, Garcia-Mendez filed an application for cancellation of removal under 8 U.S.C. § 1229b(b)(1) ("standard cancellation"), asserting that his removal would result in exceptional and extremely unusual hardship to his citizen wife.

For reasons immaterial to the instant proceedings, Garcia-Mendez's application for standard cancellation remained pending for several years. In September 2003, during the pendency of that application, Garcia-Mendez was convicted in Orange County Superior Court of three California crimes: (1) possessing, receiving, or uttering forged paper; (2) second degree burglary of a commercial structure; and (3) attempted petty theft. In August of 2004, Garcia-Mendez separated from his wife.

On June 4, 2007, Garcia-Mendez filed an I-360 petition seeking designation as a Violence Against Women Act self-petitioner ("VAWA self-petitioner") on the grounds that his wife had battered him. According to the petition, Lopez had subjected Garcia-Mendez to verbal abuse, thrown household items at him, and forced him to sleep in his car. As Garcia-Mendez explained in his filing, classification as a VAWA self-petitioner would enable him to seek a section 212(h) waiver of inadmissibility. Absent a section 212(h) waiver, Garcia-Mendez conceded, he would be disqualified from relief by his 2003 convictions. Specifically, he acknowledged, those convictions constituted crimes involving moral turpitude ("CIMTs") and, absent a waiver, would bar him from satisfying the good moral character requirement found at 8 U.S.C. § 1154(a)(1)(A)(iii)(II)(bb). United States Citizenship and Immigration Services ("USCIS") rejected Garcia-Mendez's I-360 petition on April 1, 2010, determining

he had failed to meet his burden of demonstrating that he married Lopez in good faith and that the couple had resided in the same household. *See* 8 U.S.C. § 1154(a)(1)(A)(iii)(I)(aa), (II)(dd). As a result, Garcia-Mendez was denied classification as a VAWA self-petitioner.

Garcia-Mendez next filed an application for special rule cancellation. As in his I-360 petition, he again argued that he was entitled to a section 212(h) waiver absolving the disqualifying effect of his CIMT convictions. On September 27, 2010, the IJ issued an oral decision denying Garcia-Mendez's application for special rule cancellation. Upon determining that Garcia-Mendez's past convictions qualified as CIMTs, the IJ reasoned he was facially ineligible for special rule cancellation. The IJ then rejected Garcia-Mendez's argument that he was entitled to apply for a waiver of inadmissibility under section 212(h). The IJ ordered Garcia-Mendez removed to Mexico. Due to a transcription error affecting the September 27, 2010 decision, the IJ issued a new decision on October 11, 2011 essentially repeating the substance of the prior decision. Garcia-Mendez appealed to the BIA, which affirmed the IJ's rulings in an unpublished decision. We have jurisdiction over Garcia-Mendez's petition for review under 8 U.S.C. §§ 1252(a)(1), (a)(2)(D).

## II. STANDARD OF REVIEW

Generally, when the BIA addresses a question in an unpublished decision, the agency's ruling is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1013–14 (9th Cir. 2006). If, on the other hand, the BIA has interpreted an ambiguous provision of the Immigration and Nationality Act ("INA") in

a published precedential decision, we must apply *Chevron* deference, so long as the agency's decision is based on a permissible construction of the statute. *Negusie v. Holder*, 555 U.S. 511, 516–17 (2009). This rule applies equally to an unpublished BIA order which relies on a directly-controlling, precedential agency decision. *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010). An agency's interpretation of an ambiguous statute will be permissible "unless arbitrary, capricious, or manifestly contrary to the statute." *Wilderness Society v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1059 (9th Cir. 2003) (en banc) (internal quotation marks omitted). If, however, "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43.

## III.  DISCUSSION

Garcia-Mendez asks us to hold that he is eligible to apply for a waiver of inadmissibility under section 212(h) in conjunction with his application for special rule cancellation of removal. He needs the waiver to eliminate the effect of his CIMT convictions, which otherwise render him ineligible for special rule cancellation. In attempting to avail himself of section 212(h) relief, Garcia-Mendez advances two paths to eligibility. First, as an applicant for special rule cancellation, he claims thereby to satisfy the INA's definition of a VAWA self-petitioner. Those so classified are expressly permitted to seek section 212(h) waivers. 8 U.S.C. § 1182(h)(1)(C) ("The Attorney General may, in his discretion" waive certain grounds of inadmissibility if "the alien is a VAWA self-petitioner" and other requirements have been met). In the alternative, should he not be entitled to VAWA self-petitioner status, Garcia-Mendez argues that he is otherwise entitled to

seek a section 212(h) waiver solely by virtue of his status as an applicant for special rule cancellation.

## A. *VAWA Self-Petitioners and Special Rule Cancellation Applicants*

The term "VAWA self-petitioner" is specifically and exhaustively defined under the INA as "an alien, or a child of the alien, who qualifies for relief under" one of several enumerated provisions expressly incorporated into the definition. 8 U.S.C. § 1101(a)(51)(A)–(G). Aliens who apply for special rule cancellation are nowhere to be found in the definitional list. Because the statute is "complete and unambiguous on its face," our inquiry is at an end. *Emmert Indus. Corp. v. Artisan Assocs., Inc.*, 497 F.3d 982, 987 (9th Cir. 2007). Garcia-Mendez is not, solely as a consequence of his application for special rule cancellation, a VAWA self-petitioner.

We are not swayed by the fact that both VAWA self-petitioner status and special rule cancellation relief were created by the Violence Against Women Act for the purpose of providing immigration benefits to aliens battered by citizen spouses. Indisputably, VAWA "was a generous enactment, intended to ameliorate the impact of harsh provisions of immigration law on abused women," and its provisions should therefore be "interpreted and applied in an ameliorative fashion." *Lopez-Birrueta v. Holder*, 633 F.3d 1211, 1215–16 (9th Cir. 2011) (internal quotation marks omitted). This principle, however, cannot overcome the manifest intent of Congress, as clearly expressed in the INA's exclusive definition of a VAWA self-petitioner. *See Durand v. U.S. Dep't of Labor*, 662 F.3d 1106, 1109 (9th Cir. 2011) (holding that arguments that "remedial statutes should be

construed liberally in favor of their beneficiaries" cannot "override the principle that the ordinary meaning of words in a statute controls"). Presumably, had Congress intended to classify special rule cancellation applicants as VAWA self-petitioners, it would have expanded the definitional list found at 8 U.S.C. § 1101(a)(51)(A)–(G) to include aliens who apply for special rule cancellation under 8 U.S.C. § 1229b(b)(2).[1]

Nor does Garcia-Mendez otherwise satisfy the definition of a VAWA self-petitioner. In June 2007, prior to submitting the application now at issue, Garcia-Mendez filed an I-360 petition seeking classification as a VAWA self-petitioner under 8 U.S.C. § 1154(a)(1)(A)(iii)(I).[2] USCIS denied the petition, finding (among other things) that Garcia-Mendez had not demonstrated his marriage to Lopez was entered into in good faith. While it is undisputed that VAWA self-petitioners may apply for a section 212(h) waiver, as the agency correctly found, Garcia-Mendez simply does not qualify for that designation.[3] We must next decide whether

---

[1] As demonstrated elsewhere in the INA, Congress was capable of singling out special rule cancellation applicants for benefits when it so intended. 8 U.S.C. § 1641(c)(1)(B)(v) (authorizing aliens who make out a prima facie case for special rule cancellation to seek public benefits).

[2] Section 1154(a)(1)(A)(iii)(I), operating together with 8 U.S.C. § 1255(a), allows an alien battered by a citizen spouse (or intended spouse) to seek adjustment of status to that of a permanent resident. An applicant who "qualif[ies] for" this relief meets the definition of VAWA self-petitioner and is, in turn, entitled to seek the section 212(h) waiver. 8 U.S.C. §§ 1101(a)(51)(A), 1182(h)(1)(C).

[3] At oral argument, Garcia-Mendez raised, for the first time, the claim that he was entitled to a section 212(h) waiver because he made out a prima facie case for relief in his I-360 petition. As determined by USCIS, however, Garcia-Mendez simply did not "qualify for" relief under 8

special rule applicants—who are not VAWA self-petitioners—are nonetheless eligible for the waiver.[4]

## B. *Section 212(h) Waiver for Special Rule Cancellation Applicants*

In its unpublished decision deeming Garcia-Mendez ineligible for section 212(h) relief, the BIA relied on its published decision in *Matter of Y-N-P-*, 26 I. & N. Dec. 10 (B.I.A. 2012). In *Y-N-P-*, the BIA concluded that an alien is ineligible to seek a section 212(h) waiver in conjunction with an application for special rule cancellation. 26 I. & N. Dec. at 12–18. Because the BIA's unpublished decision dismissing Garcia-Mendez's appeal was founded on *Y-N-P-* (a precedential decision addressing precisely the same question), we are bound to apply *Chevron* deference if the disputed provisions of the INA are ambiguous. *Negusie*, 555 U.S. at 518; *Uppal*, 605 F.3d at 714. We conclude that they are.

### 1. *Ambiguity*

The INA precludes an alien from seeking section 212(h) relief unless the Attorney General "has consented to the alien's applying or reapplying for a visa, for admission to the

U.S.C. § 1154(a)(1)(A)(iii)(I). Nothing in the language of section 212(h) supports the illogical conclusion that an alien is entitled to seek a waiver of inadmissibility because he applied for and was denied VAWA self-petitioner status.

[4] This is not to say that any applicant for special rule cancellation is categorically unqualified to be a VAWA self-petitioner, merely that the two terms refer to different procedural avenues to immigration benefits under the INA.

United States, or adjustment of status." 8 U.S.C. § 1182(h)(2). If they are indeed entitled to seek the waiver, special rule cancellation applicants must fit within one of these criteria. As they are not seeking visas or admission[5] to the United States, a qualification, if at all, for section 212(h) relief would arise only by way of "adjustment of status." *Id.*

Section 1229b(b), which contains the special rule cancellation provisions, is titled: "Cancellation of removal and *adjustment of status* for certain nonpermanent residents." 8 U.S.C. § 1229b(b) (emphasis added). When a special rule cancellation applicant is granted relief, the Attorney General cancels the order of removal entered against the alien and "*adjust*[s] [him] to the *status* of an alien lawfully admitted for permanent residence." *Id.* at § 1229b(b)(2)(A) (emphasis added). This language might be read to suggest that the Attorney General would have "consented to" the "adjustment of status" of certain special rule cancellation applicants. 8 U.S.C. § 1182(h)(2). Another form of relief under the INA, however, shares the name "adjustment of status." Pursuant to 8 U.S.C. § 1255, an alien with nonimmigrant status may have his status adjusted to that of a lawful permanent resident if he can satisfy certain criteria ("section 245 adjustment").

Section 212(h) of the INA is unclear as to whether the "adjustment of status" within the meaning of the section refers to section 245 adjustment only or adjustment of status resulting from special rule cancellation as well. We normally

---

[5] Garcia-Mendez does not challenge the BIA's conclusion, in *Y-N-P-*, that a special rule cancellation applicant is not "applying . . . for admission" within the meaning of section 212(h) simply because he initially entered the United States without inspection. *See* 26 I. & N. Dec. at 12–14 (discussing 8 U.S.C. § 1225(a)(1)).

presume that words "carry the same meaning when they appear in different but related sections" of the same statutory scheme. *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1362 (2013). This rule, however, "creates only a rebuttable presumption regarding the meaning of similar language." *Sun v. Ashcroft*, 370 F.3d 932, 939 (9th Cir. 2004).

In *Y-N-P-*, the BIA explained why, in its view, "adjustment of status" does not carry a unitary meaning throughout the INA. Section 245 adjustment of status, the BIA reasoned, is a fundamentally different process than "cancellation of removal and adjustment of status," with distinct procedures and eligibility requirements. 26 I. & N. Dec. at 14–15. Under section 245, an alien "who was inspected and admitted or paroled into the United States" may apply to become a lawful permanent resident provided he is "admissible" and also satisfies other criteria. 8 U.S.C. § 1255(a). Special rule cancellation, in contrast, permits an alien in removal proceedings the opportunity to cancel deportation and automatically become a lawful permanent resident if he can prove, among other things, that he is "not inadmissible" under specified INA provisions. 8 U.S.C. § 1229b(b)(2). Further observing that "cancellation of removal and adjustment of status" is distinct from mere "adjustment of status," the BIA reasoned that Congress intended section 212(h) waivers to be available only to applicants for the latter species of relief. 26 I. & N. Dec. at 15–16.

The BIA's analysis in *Y-N-P-* demonstrates the ambiguity latent in section 212(h). *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning—or ambiguity—of certain words or phrases may only become

evident when placed in context."). That provision does not cross-reference other sections of the INA to identify certain aliens eligible for relief—it merely states that the waiver requires the Attorney General to have consented to the alien's "adjustment of status." 8 U.S.C. § 1182(h)(2). The plain language of the statute simply does not make clear whether Congress intended the waiver to be available only to aliens applying for section 245 adjustment, or whether Congress also sought to allow aliens seeking special rule cancellation to take advantage of the discretionary relief. Because either interpretation would be reasonable, we conclude that the statute is ambiguous. *Alaska Wilderness League v. U.S. E.P.A.*, 727 F.3d 934, 938 (9th Cir. 2013) ("A statute is ambiguous if it is susceptible to more than one reasonable interpretation.").

### 2. *Permissible Interpretation*

Proceeding to step two of the *Chevron* framework, we must determine whether the BIA's construction was "a reasonable policy choice for the agency to make." *Chevron*, 467 U.S. at 845. This is a generous standard, requiring deference "even if the agency's reading differs from what the court believes is the best statutory interpretation." *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 980 (2005). Regardless of whether *Y-N-P-* might reasonably have been decided differently, we conclude that the BIA arrived at a permissible construction of an ambiguous statutory scheme.

Garcia-Mendez's argument to the contrary centers on the BIA's decision in *Matter of Bustamante*, 25 I. & N. Dec. 564 (B.I.A. 2011). Although *Bustamante* predated *Y-N-P-* and did not address the question presented here, Garcia-Mendez

contends that the reasoning of the former case undermines that of the latter.  In *Bustamante*, the BIA held that section 212(h) waivers are unavailable to applicants for standard cancellation of removal (as distinct from special rule cancellation).  25 I. & N. Dec. at 570.  To be entitled to standard cancellation of removal, an alien must demonstrate (in relevant part) that he "has not been convicted" of certain offenses.  8 U.S.C. § 1229b(b)(1)(C).  Noting this language, the BIA pointed out that section 212(h) refers to waiving "inadmissibility," not "convictions."  25 I. & N. Dec. at 567. Because section 212(h) does not operate to nullify "convictions," the BIA reasoned, it provides no relief to applicants for standard cancellation of removal.  *Id.* at 569–70.

In so holding, the BIA found it instructive that, in drafting the special rule cancellation provision, "Congress chose to use language relating to inadmissibility"—as opposed to the "convictions" language found in the standard cancellation provision.  *Id.* at 568.  The implication of the BIA's reasoning, according to Garcia-Mendez, is that Congress intended to make the section 212(h) waiver of inadmissibility available to special rule applicants—who must demonstrate they are "not inadmissible"—but not to aliens seeking standard cancellation, who must show they have "not been convicted."**[6]** *Compare* 8 U.S.C. § 1229b(b)(1)(C) *with id.* at (b)(2)(A)(iv).

---

**[6]** In *Y-N-P-*, the BIA rejected this argument.  26 I. & N. Dec. at 17–18 ("[A]lthough we cannot explain the disparate language regarding the bars to relief in [the standard cancellation provision] and the [special rule cancellation provision], we find it unlikely that Congress would have made such an effort to ensure that the domestic violence waiver was made available to special rule cancellation applicants if other waivers of inadmissibility and deportability were already implicitly available . . . .").

The foregoing argument, whatever its persuasive force, does not render the BIA's interpretation impermissible. The symmetry between special rule cancellation (which requires applicants to demonstrate they are "not inadmissible") and section 212(h) (which expunges grounds of inadmissibility) is not dispositive proof that the two provisions were intended to work together. Nor does the ameliorative intent behind VAWA, invoked again by Garcia-Mendez, change our conclusion. Our inquiry is confined to whether the agency's interpretation was "arbitrary, capricious, or manifestly contrary to the statute." *Wilderness Society*, 353 F.3d at 1059 (en banc) (quoting *Chevron*, 467 U.S. at 844) (internal quotation marks omitted). Again, the INA is inconclusive as to whether special rule applicants may apply for a section 212(h) waiver. The BIA's resolution of that question in the negative was a permissible interpretation of an ambiguous statutory scheme. We therefore deny Garcia-Mendez's petition for review.

## IV.  CONCLUSION

We hold that an alien does not, by sole virtue of his status as an applicant for special rule cancellation of removal, meet the definition of a VAWA self-petitioner. We further hold that an applicant for special rule cancellation does not, by virtue of that status, become eligible to seek a section 212(h) waiver. Applicants for special rule cancellation may not circumvent the eligibility requirement set forth therein by applying for a waiver of inadmissibility under section 212(h) for which they are otherwise statutorily ineligible. The BIA did not err in affirming the IJ's denial of Garcia-Mendez's application.

**PETITION FOR REVIEW DENIED.**