[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11458

_____

Agency No. A070-064-351

JORGE O. AREVALO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 6, 2017)

Before JULIE CARNES and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

PER CURIAM:

This appeal requires the Court to determine whether to grant deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to the Board of Immigration Appeals's ("BIA") interpretation of § 212(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h), in the context of an application for cancellation of removal under § 240A(b)(2)(A) of the INA, 8 U.S.C. § 1229b(b)(2)(A).

Section 1182(h) is a waiver provision:  Under certain defined circumstances, it permits the Attorney General to waive an immigrant's inadmissibility to the United States, including in cases where the immigrant has committed a crime of moral turpitude.  *See* 8 U.S.C. § 1182(a)(2)(A) (establishing that an alien who has committed a crime involving moral turpitude is generally inadmissible).  The statutory framework does not clarify whether the § 1182(h) waiver applies to applicants seeking relief under § 1229b(b)(2)(A), a "special rule" whereby an otherwise inadmissible immigrant who has been the victim of domestic violence may cancel his removal from the United States if he meets specified criteria

---

[*] Honorable Richard W. Goldberg, Judge for the United States Court of International Trade, sitting by designation.

(hereinafter, the "Special Rule").  One of those criteria, however, states that the immigrant must not be inadmissible as a result of his commission of a crime involving moral turpitude.  8 U.S.C. § 1229b(b)(2)(A)(iv).

Petitioner Jorge Arevalo was charged with inadmissibility and sought to cancel his removal from the country under the Special Rule.  Standing in his way were two convictions for two separate crimes of moral turpitude: petty theft and child abuse.  To avoid the impact of these convictions, he applied for a waiver of inadmissibility under § 1182(h).  The Immigration Judge ("IJ") presiding over Arevalo's case denied his application for waiver.  On appeal, the BIA confirmed that a petitioner who has committed a crime of moral turpitude and who is seeking to cancel his removal under the Special Rule is not entitled to use the § 1182(h) waiver to bring himself into compliance with the Special Rule's requirements.  With the benefit of oral argument and after careful review of the statutory framework, we conclude that the BIA's interpretation is entitled to deference under *Chevron* and DENY Arevalo's petition for review.

## BACKGROUND[1]

Jorge Arevalo is a native and citizen of Guatemala.  He entered the United States without being admitted or paroled near Newberry Park, California, on or around December 1, 1986.  As such, he has at all times been inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled . . . is inadmissible.").

Between 1989 and 1991, Arevalo was arrested and convicted of two crimes.  His first conviction was for petty theft from a K-Mart in Ventura County, California.  His second was for felony child abuse, also in Ventura County.  He was sentenced to probation for both convictions.

In May 2006, Arevalo was reclassified as a special immigrant under Form I-360 and was provisionally permitted to remain in the United States.  A year later, immigration authorities learned of his two convictions and revoked approval of his Form I-360 petition upon finding that the convictions showed that Arevalo lacked the requisite "good moral character."

In May 2009, the Department of Homeland Security ("DHS") issued a Notice to Appear, Form I-862, charging Arevalo with removability under

---

[1]  Background facts are derived from the opinions of the Immigration Judge and the BIA in the proceeding below.

4

§ 1182(a)(6)(A)(i) for presence in the Unites States without having been admitted. In the ensuing proceeding, Arevalo conceded his removability under § 1182(a)(6)(A)(i) but asked the presiding IJ to find him eligible for cancellation of removal under the so-called "Special Rule" for cancellation of removal, 8 U.S.C. § 1229b(b)(2)(A). The DHS opposed this request, arguing that Arevalo was ineligible for Special Rule cancellation because he is inadmissible under § 1182(a)(2)(A)(i) for having committed two crimes of moral turpitude. Under § 1229b(b)(2)(A)(iv), an immigrant may not cancel his removal unless he can demonstrate that he "is not inadmissible under [§ 1182(a)(2)]."

Arevalo countered by requesting a waiver of inadmissibility under 8 U.S.C. § 1182(h), under which "[t]he Attorney General may, in his discretion, waive the application of [§ 1182(a)(2)] if," among other things, "the Attorney General . . . has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status." The IJ rejected Arevalo's petition and concluded that the waiver provision of § 1182(h) is not available to applicants for cancellation of removal under the Special Rule. Because he could not cleanse his record of inadmissibility under § 1182(a)(2)(A)(i), he failed to meet the criteria of the Special Rule. His application for cancellation of removal was therefore denied. Arevalo timely appealed, and the BIA affirmed the IJ's reasoning.

5

In rejecting Arevalo's petition for a § 1182(h) waiver, both the IJ and the BIA relied on precedent established by the BIA in *Matter of Y-N-P-*, 26 I & N Dec. 10 (BIA 2012). In that opinion, the BIA analyzed the interplay between the § 1182(h) waiver and the Special Rule and concluded that a Special Rule applicant is not entitled to obtain a § 1182(h) waiver in connection with his application for cancellation of removal. Arevalo now appeals, asking this Court to review and reject the BIA's interpretation of § 1182(h) in this context.

## STANDARD OF REVIEW

This Court reviews questions of law, including questions of statutory interpretation, *de novo*, subject to the principles of deference articulated in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Where the BIA has interpreted an ambiguous provision of the INA in a published, precedential decision, we defer to its interpretation under *Chevron*, as long as it reflects a permissible construction of the statute. *See Negusie v. Holder*, 555 U.S. 511, 516–17 (2009).

## DISCUSSION

The BIA clearly and directly addressed the legal question at issue here in its published, precedential opinion *Matter of Y-N-P-*, 26 I & N Dec. 10 (BIA 2012). In deciding Arevalo's case, the IJ and the BIA relied directly upon the BIA's conclusions of law in *Matter of Y-N-P-*. Thus, there is no dispute in this appeal

that we must review the BIA's interpretation of § 1182(h) in *Matter of Y-N-P-* through the deferential lens of *Chevron*.  *See Quinchia v. U.S. Atty. Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008) ("The Supreme Court has [ ] instructed that the 'principles of *Chevron* deference are applicable' to the BIA 'as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication.'") (citing *INS v. Aguirre–Aguirre,* 526 U.S. 415, 424–25 (1999)).  If we conclude that the BIA's interpretation in *Matter of Y-N-P-* is entitled to deference, the BIA's disposition of Arevalo's case must be affirmed.

Under *Chevron*, "[w]hen a court reviews an agency's construction of the statute which it administers . . . [and] the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Chevron,* 467 U.S. at 842–43.  "In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."  *Id.* at 844.  *See also United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) ("[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.").

7

*Chevron* thus prescribes a two-step analysis.  First, we ask whether the statute at issue is ambiguous, which requires the Court to consider "whether Congress has directly spoken to the precise question at issue."  *Vidiksis v. EPA,* 612 F.3d 1150, 1154 (11th Cir. 2010) (quoting *Chevron*, 467 U.S. at 842–45) (internal quotation marks omitted).  If the statute is unambiguous, the Court applies it according to its terms and no deference is due.  *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009); *see also Chevron*, 467 U.S. at 842–43 (If "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").  Second, if the statute is silent or ambiguous with respect to the specific issue presented, we must then determine whether the agency's interpretation is reasonable or based on a permissible construction of the statute.  *Chevron*, 467 U.S. at 843.  A reasonable interpretation is one that is "rational and consistent with the statute."  *See Sullivan v. Everhart*, 494 U.S. 83, 89 (1990).

## I.    Statutory Framework

There are several intersecting statutory provisions at issue here, and the framework governing cancellation of removal is complex.  To contextualize our discussion, we begin by identifying the statutes implicated by this appeal and clarifying how they work together.

### A.    Inadmissibility and the § 1182(h) Waiver

The INA identifies numerous circumstances under which an immigrant present in the United States is deemed "inadmissible" and thus vulnerable to removal from the country.  Generally speaking, an "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible" under the INA and may be removed from the country on those grounds.  8 U.S.C. § 1182(a)(6)(A)(i).  Even an immigrant who was admitted to the country legally may become inadmissible if he is "convicted of, or [ ] admits having committed, . . . a crime involving moral turpitude."  8 U.S.C. § 1182(a)(2)(A)(i) (the "CIMT Provision").

There is no dispute in this case that Arevalo is inadmissible under both statutory sections.  Arevalo does not dispute that he entered the country "without being permitted," and he further concedes that his convictions for petty theft and felony child abuse are both crimes of moral turpitude under the CIMT Provision. Arevalo's right to remain in the United States thus hinges, in part, on his ability to obtain a waiver of inadmissibility.

Section 1182(h), the waiver provision at the center of this appeal, identifies a detailed set of conditions under which the "[t]he Attorney General may, in his discretion, waive the application of" the CIMT Provision.  Such a waiver has the

effect of cleansing an immigrant of "inadmissible" status under the CIMT

Provision notwithstanding his conviction for a crime of moral turpitude.  The

waiver is available where the following requirements (among others) are met: the

convictions at issue "occurred more than 15 years before the date of the alien's

application for a visa, admission, or adjustment of status"; the alien's admission to

the country "would not be contrary to the national welfare, safety, or security of

the United States"; "the alien has been rehabilitated"; and—most importantly for

this appeal—"the Attorney General, in his discretion, . . . has consented to the

alien's applying or reapplying for a visa, for admission to the United States, or

adjustment of status."  8 U.S.C. § 1182(h).

## B.    Cancellation of Removal and Adjustment of Status

The DHS may initiate removal proceedings against any alien who has been

deemed "inadmissible" under 8 U.S.C. § 1182(a) or "deportable" under 8 U.S.C.

§ 1227(a).  *See* 8 U.S.C. § 1229a(a).  The initiation of removal proceedings is not,

however, the end of the matter, as the INA provides two routes by which an alien

may "cancel" his removal and adjust his status to that of a lawful permanent

resident.

The primary cancellation-of-removal statute, which we will refer to as the

General Rule, establishes that "[t]he Attorney General may cancel removal of, and

10

adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien":

  (A)  has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

  (B)  has been a person of good moral character during such period;

  (C)  *has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5)*; and

  (D)  establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1) (emphasis added).  Congress supplemented the General Rule for cancellation of removal with a "special rule for battered spouse[s] or child[ren]," 8 U.S.C. § 1229b(b)(2)(A), as part of the Violence Against Women Act of 1994 ("VAWA").  The Special Rule provides that "[t]he Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien demonstrates that":

  (i)  (I) the alien has been battered or subjected to extreme cruelty by a spouse or parent who is or was a United States citizen (or is the parent of a child of a United States citizen and the child has been battered or subjected to extreme cruelty by such citizen parent); (II) the alien has been battered or subjected to extreme cruelty by a spouse or parent who is or was a lawful permanent resident (or is the parent of a child of an alien who is or was a lawful permanent resident and the child has been battered or subjected to extreme cruelty by such permanent

11

resident parent); or (III) the alien has been battered or subjected to extreme cruelty by a United States citizen or lawful permanent resident whom the alien intended to marry, but whose marriage is not legitimate because of that United States citizen's or lawful permanent resident's bigamy;

   (ii)   the alien has been physically present in the United States for a continuous period of not less than 3 years immediately preceding the date of such application, and the issuance of a charging document for removal proceedings shall not toll the 3-year period of continuous physical presence in the United States;

   (iii)  the alien has been a person of good moral character during such period, subject to the provisions of subparagraph (C);

   (iv)   the alien *is not inadmissible under paragraph (2) or (3) of section 1182(a) of this title*, is not deportable under paragraphs (1)(G) or (2) through (4) of section 1227(a) of this title, subject to paragraph (5), and has not been convicted of an aggravated felony; and

   (v)    the removal would result in extreme hardship to the alien, the alien's child, or the alien's parent.

8 U.S.C. § 1229b(b)(2)(A) (emphasis added).  Where an alien is granted cancellation of removal under either the General or the Special Rule, his status is automatically adjusted to that of a lawful permanent resident as a matter of course. No separate application for adjustment of status is required.

   As the language of these parallel provisions makes clear, the Special Rule imposes a more lenient set of criteria for aliens who have been victims of domestic abuse.  Most notably for purposes of this appeal, the General Rule is unavailable to an alien who has been "convicted of an offense under" the CIMT Provision, § 1182(a)(2), while the Special Rule requires only that the alien not be

"inadmissible" under that Provision.  *Compare* 8 U.S.C. § 1229b(b)(1)(C) *with* 8 U.S.C. § 1229b(b)(2)(A)(iv).  Neither rule clarifies whether an alien who has been convicted of a crime of moral turpitude may use the § 1182(h) waiver to satisfy its criteria.  We focus our analysis on the Special Rule, as this is the rule under which Arevalo claims relief.

## II.    *Chevron* Analysis

The proper scope of the § 1182(h) waiver in the context of the Special Rule for cancellation of removal is a question of first impression in this Circuit.  The only other court to have considered it is the Ninth Circuit, which concluded in *Garcia-Mendez v. Lynch*, 788 F.3d 1058 (9th Cir. 2015), that the statutory language was ambiguous and that the BIA's construction thereof was permissible.  *Id.* at 1063–65.  We find the Ninth Circuit's application of the *Chevron* framework persuasive and agree that the BIA's interpretation is entitled to deference.

### A.    The BIA's Analysis in *Matter of Y-N-P-*

The starting point of our analysis is the BIA's published opinion in *Matter of Y-N-P-*, 26 I & N Dec. 10 (BIA 2012).  The respondent in *Matter of Y-N-P-* was a native and citizen of Mexico who entered the United States without permission.  *Id.* at 10.  After nine years in the country illegally, she was convicted of the felony offense of "facilitation to commit illegally conducting an enterprise" under Arizona law.  *Id.*  The DHS initiated removal proceedings, during which the

13

respondent conceded that she was inadmissible under § 1182(a)(6)(A)(i) for having entered the country without having been admitted or paroled. *Id*. She also conceded that her felony conviction was a crime involving moral turpitude that rendered her inadmissible under the CIMT Provision, § 1182(a)(2)(A)(i). The only distinction between Arevalo and the respondent in *Y-N-P-* is the nature of their underlying convictions.

The issue the BIA considered in *Matter of Y-N-P-* was "whether an applicant for special rule cancellation of removal under [§ 1229b(b)(2)(A)] can utilize a [§ 1182(h)] waiver of inadmissibility to overcome the [Special Rule's] bar resulting from inadmissibility under [§ 1182(a)(6)(A)(i)]." *Matter of Y-N-P-*, 26 I & N Dec. at 11. "After reviewing the pertinent statutes, the overall scheme of the cancellation statute, and the relevant legislative history," the BIA concluded that the respondent could not use the § 1182(h) waiver to become eligible for the Special Rule. *Id*. at 12.

The BIA focused on the fact that the waiver is available only where, among other requirements, the Attorney General "has consented to the alien's *applying or reapplying for a visa, for admission to the United States, or adjustment of status*." 8 U.S.C. § 1182(h)(2) (emphasis added). The BIA viewed this as a complete and exclusive list of procedural postures from which a petitioner is entitled to obtain the waiver. Thus, the BIA analyzed whether an alien applying for "cancellation of

14

removal and adjustment of status" under the Special Rule is "applying . . . for admission . . . or adjustment of status" for purposes of § 1182(h).[2]

First, it held that an applicant for cancellation of removal is not an "applicant for admission," as that phrase is used in § 1182(h), because an applicant for admission "must have some *basis* for being admitted" to the country. *Matter of Y-N-P-*, 26 I & N Dec. at 13. An applicant for cancellation of removal has, by definition, no basis for admission to the country, as he has already been charged with removability under either § 1182(a) or § 1227(a). *Id*. The BIA noted that § 1182(h) "does not provide an independent basis for aliens to be admitted to the United States. Rather, [the] waiver enables a qualifying alien to be admitted when there is some basis for admission (for instance, a valid immigrant or nonimmigrant visa), but the alien is barred by one of the enumerated grounds of inadmissibility." *Id*. at 13–14. Thus, "[a] statute giving the Attorney General discretion to grant relief from *inadmissibility* does not give the Attorney General discretion to grant relief from *removal*." *Id*. at 14 (citing *Sanchez v. Holder*, 560 F.3d 1028, 1032 (9th Cir. 2009)) (emphasis in original) (internal quotation marks omitted). As such, the BIA concluded, an alien who has no grounds to seek admission to the country in

---

[2] In *Matter of Y-N-P-*, as here, the petitioner did not argue that she was "applying for a visa."

the first instance cannot be construed as "applying for admission" to the country under § 1182(h) when he petitions for cancellation of removal.

Second, the BIA held that a petitioner for Special Rule cancellation of removal is not "applying for adjustment of status" within the meaning of § 1182(h). The general adjustment-of-status statute, 8 U.S.C. § 1255, describes the conditions under which the Attorney General may change the status of an inadmissible alien to that of a person lawfully admitted for permanent residence. The Special Rule also results in an "adjustment" of the petitioner's "status": The Rule expressly states that "[t]he Attorney General may cancel removal of, *and adjust to the status of an alien lawfully admitted for permanent residence*," any alien who meets the specified criteria. 8 U.S.C. § 1229b(b)(2)(A) (emphasis added). But, as the BIA emphasized, an alien applying for "adjustment of status" under § 1255 stands in a different posture from one applying for "cancellation of removal and adjustment of status" under § 1229b(b).

Problematically, § 1182(h) states only that it covers aliens "applying for . . . adjustment of status." 8 U.S.C. § 1182(h)(2). It makes no reference to the General or Special Rules, nor does it acknowledge that there are two distinct statutory routes by which an alien may seek adjustment of status.

Having found § 1182(h)'s phrase "adjustment of status" ambiguous, the BIA considered the statute "in context with the provisions of the INA as a whole" to

16

conclude that "adjustment of status" under § 1182(h) does not refer to the process of "cancellation of removal and adjustment of status" that is described in the General and Special Rules. *Matter of Y-N-P-*, 26 I & N Dec. at 15. The BIA reasoned that, in § 1182(h), "Congress expressly listed the circumstances under which an alien may apply for [a] waiver of inadmissibility" and "did not include 'a cancellation of removal and adjustment of status proceeding' among the limited scenarios in which an alien may apply for such a waiver." *Id.* Thus, § 1182(h) "reflect[ed] no congressional intent to permit an alien to apply for the waiver in conjunction with a special rule cancellation application." *Id.*

In support of this conclusion, the BIA emphasized the procedural differences between "cancellation of removal and adjustment of status" under the General and Special Rules and "adjustment of status" under § 1255. In the former scenario, adjustment of status "occurs as a matter of course once the alien has established" eligibility for cancellation. *Matter of Y-N-P-*, 26 I & N Dec. at 15. "Such an alien is not required to file an application for adjustment of status . . . or otherwise satisfy any eligibility criteria beyond those included in [the General or Special Rule]." *Id.* By contrast, a pure "adjustment of status," governed by § 1255 and 8 C.F.R. § 1245.1(f), involves a separate application process and a separate set of eligibility criteria. The BIA acknowledged that, generally speaking, terms that appear more than once in a statute are construed to have a constant meaning. But it

17

concluded that the phrase "adjustment of status" bears different meanings in § 1229b(b)(2)(A) and § 1255 and, as a result, use of that phrase in § 1182(h) does not necessarily implicate both processes. *Id*.

The BIA bolstered its reading of § 1182(h) with a structural argument, drawing parallels between the inadmissibility provisions of § 1182(a) and the deportability provisions of § 1227(a). Specifically, the BIA focused on 8 U.S.C. § 1227(a)(2)(E)(i), under which "[a]ny alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable." As with the CIMT Provision, § 1182(a)(2), deportability under § 1227(a)(2)(E)(i) may be waived by the Attorney General. Waiver is available only upon a finding that the abuse was committed in self-defense or that "that there was a connection between the crime and the alien's having been battered or subjected to extreme cruelty." 8 U.S.C. § 1227(a)(7)(A)(i) (hereinafter, the "Domestic Violence Waiver").

Both the Special Rule and the Domestic Violence Waiver were added to the statutory framework in 1994 as part of VAWA. Indeed, Congress expressly incorporated the Domestic Violence Waiver into the Special Rule via the Special Rule's "Paragraph 5," which states that "[t]he authority provided under [the Domestic Violence Waiver] may apply under [§ 1229b(b)(2)(A)(iv)] in a cancellation of removal and adjustment of status proceeding." In other words, a

18

Special Rule applicant who is "deportable" under § 1227(a)(2)(E)(i) may obtain a waiver of that deportability in connection with his petition for cancellation of removal.

To clarify the impact of Paragraph 5, consider the following scenario. An alien present in the United States is convicted of a crime of domestic violence and thus is charged with removal under § 1227(a)(2)(E)(i). She files a petition to cancel her removal under the Special Rule, claiming that she is also the victim of domestic violence and meets the remaining criteria of the Special Rule. Absent a waiver, she cannot satisfy the fourth criteria for application of the Special Rule— § 1229b(b)(2)(A)(iv)—because her conviction renders her "deportable under . . . section 1227(a)." Her application for cancellation of removal does not, however, automatically fail, because the Special Rule also expressly provides that "[t]he authority provided under [the Domestic Violence Waiver] *may apply under [§ 1229b(b)(2)(A)(iv)]* in a cancellation of removal and adjustment of status proceeding." 8 U.S.C. § 1229b(b)(5) (emphasis added). *See also* 8 U.S.C. § 1229b(b)(2)(A)(iv) (stating that an alien is ineligible under the Special Rule if she is deportable under § 1227(a) "subject to paragraph (5)"). Thus, even though she is deportable for having committed domestic violence, she is plainly entitled to seek a waiver of that ground of deportation under the Domestic Violence Waiver.

Such a waiver would cure her deficiency under the fourth criteria for cancellation of removal under the Special Rule.

The BIA referenced this feature of the Special Rule and concluded that "[t]here would have been no need for Congress to specify, and subsequently clarify, that the bar [to cancellation of removal under § 1229b(b)(2)(A)(iv)] can be overcome by applying the [Domestic Violence Waiver] if it had intended to make all waivers of inadmissibility and deportability"—including the § 1182(h) waiver—"available to special rule cancellation applicants." *Matter of Y-N-P-*, 26 I & N Dec. at 17. In other words, *expressio unius est exclusio alterius*: Expressing one item of an associated group or series excludes another left unmentioned. *See, e.g.*, *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 940 (2017). In the BIA's view, it was "unlikely that Congress would have made such an effort to ensure that the domestic violence waiver was made available to [Special Rule] applicants if other waivers of inadmissibility and deportability were already implicitly available." *Matter of Y-N-P-*, 26 I & N Dec. at 18.

The BIA also squarely considered and dismissed a strong counterargument to its interpretation. As noted *supra*, the Special Rule does not apply to aliens who are deemed "inadmissible" under the CIMT Provision, § 1182(a)(2)(A)(i), for having committed a crime involving moral turpitude. By contrast, the General Rule provides that an alien is ineligible for cancellation if he has been "*convicted*"

of a crime involving moral turpitude as described in § 1182(a)(2)(A)(i).  8 U.S.C.
§ 1229b(b)(1)(C) (emphasis added).  The respondent in *Matter of Y-N-P-* argued
that the use of the term "inadmissible" in the Special Rule—rather than
"convicted"—signals Congress's intent for the § 1182(h) waiver to apply to the
Special Rule.  The § 1182(h) waiver has the effect of eliminating an alien's
"inadmissibility"; it does not cleanse the alien's record of the underlying
conviction.  Thus, Congress's choice of the term "inadmissible" in the Special
Rule implicitly invoked the § 1182(h) waiver.  The BIA acknowledged this
argument but declined to find the anomaly significant enough to overcome the
implications of its core analysis.  *Matter of Y-N-P-*, 26 I & N Dec. at 17–18.

Similarly, the BIA addressed and dismissed the petitioner's argument that a
narrow reading of § 1182(h) "would run at cross-purposes to the ameliorative
purpose of the [Special Rule]" as part of VAWA.  *Id.* at 18.  The BIA recognized
this purpose but concluded that "various other provisions of [the Special Rule]
offer greater flexibility for [Special Rule] applicants" than does the General Rule.
*Id.*  For instance, the General Rule requires an applicant for cancellation of
removal to have been continuously present in the country for ten years; the Special
Rule requires continuous presence for a period of only three years.  *Compare* 8
U.S.C. § 1229b(b)(1)(A) *with* 8 U.S.C. § 1229b(b)(2)(A)(ii).  Thus, the BIA noted,
the Special Rule remains lenient toward a greater number of otherwise-deportable

21

aliens, even if it excludes aliens who have committed crimes involving moral turpitude.  The BIA also observed that Congress expressly provided that the § 1182(h) waiver is available to self-petitioners under VAWA, 8 U.S.C. § 1182(h)(1)(C), thus ensuring lenient treatment of individuals meeting the criteria associated with that status while precluding relief for those who have already been charged with removal.

With this summary of the BIA's analysis in mind, we proceed to consider whether *Matter of Y-N-P-* reflected a reasonable interpretation of an ambiguous statute.

### B.     *Chevron* Step One: Ambiguity

The first question before us is whether there is, in fact, statutory ambiguity in the interaction between the § 1182(h) waiver and the Special Rule for cancellation of removal under § 1229b(b)(2)(A), "such that Congress delegated authority to [the BIA] to fill a statutory gap."  *Fajardo v. United States Att'y Gen.*, 659 F.3d 1303, 1307 (11th Cir. 2011).

On appeal, Arevalo argues that "[t]here is absolutely no ambiguity [ ] in the plain reading of the statutes here":  An applicant under the Special Rule is clearly applying for *adjustment of status* as well as *cancellation of removal*, 8 U.S.C. § 1229b(b), and such adjustment converts the applicant "from one who has no status into one who has the status of an *admitted lawful permanent resident*."

22

(Emphases in original.)  Thus, Arevalo argues, § 1182(h) is plainly available to an applicant for cancellation of removal under the language of the Special Rule.  Upon careful review of the statutory language in the context of the INA, we disagree:  Congress failed to clarify whether the term "adjustment of status" in § 1182(h) was intended to cover the process of "cancellation of removal and adjustment of status" under § 1229b(b) of the INA.

The INA uses the term "adjustment of status" in at least two distinct contexts.  One form of relief appears at 8 U.S.C. § 1255 and is termed simply "adjustment of status."  Under this provision, an alien with nonimmigrant status who is not subject to removal proceedings may have his status adjusted to that of a lawful permanent resident as long as he satisfies certain defined criteria.  8 U.S.C. § 1255.  The second form of status-adjustment occurs by application of the General and Special Rules:  When an applicant for cancellation of removal is granted relief, the Attorney General cancels his removal and "*adjust[s* him] to the *status* of an alien lawfully admitted for permanent residence."  8 U.S.C. § 1229b(b)(2)(A) (emphasis added).  Indeed, both the General Rule and the Special Rule appear under the heading "Cancellation of removal and *adjustment of status* for certain nonpermanent residents," 8 U.S.C. § 1229b(b) (emphasis added), indicating that they lead to the same result as § 1255.

23

It is simply not clear from the plain language of § 1182(h) whether it covers only one or both these variants of status-adjustment. When § 1182(h) says that it applies where the Attorney General "has consented to the alien's applying or reapplying for . . . adjustment of status," it may be referring only to "adjustment of status" under § 1255, or it may also contemplate the sort of "adjustment of status" that follows automatically from cancellation of removal. While the two statutes produce similar, if not identical, outcomes, they entail separate and distinct requirements for relief. Thus, the term "adjustment of status" does not refer to the same statutory process when separately recited in § 1255 and the Special Rule.

The use of the term "adjustment of status" in § 1182(h), without elaboration or statutory cross-reference, renders the section open to more than one viable interpretation. Accordingly, we conclude that § 1182(h) is "ambiguous" for *Chevron* purposes in the context of Special Rule cancellation of removal proceedings and move onto Step Two of the *Chevron* analysis.

### C.    *Chevron* **Step Two: Reasonableness**

The final *Chevron* inquiry is whether the BIA's interpretation of § 1182(h), as it interacts with the Special Rule for cancellation of removal, is reasonable. As the Supreme Court has noted, the reasonableness standard is a generous one, requiring deference "even if the agency's reading differs from what the court believes is the best statutory interpretation." *National Cable & Telecomm. Ass'n v.*

24

*Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).  Given this lenient standard, and upon careful review of the BIA's opinion in *Matter of Y-N-P-* and Arevalo's arguments, we conclude that the BIA has adopted a permissible construction of § 1182(h) in this context.  Generally speaking, we find that the BIA's discussion in *Matter of Y-N-P-* dealt thoroughly with this complex question and thoughtfully considered the relevant counterarguments.  Whether or not one could argue for a different interpretation of the statutory framework, we cannot conclude that the BIA's interpretation was unreasonable.

The chief counterargument to the BIA's narrow reading of § 1182(h) relates to the apparent distinction between "adjustment of status" under § 1255 and "cancellation of removal and adjustment of status" under § 1229b(b).  To be sure, the general adjustment-of-status statute and the Special Rule for cancellation of removal specify the same outcome:  the change of an alien's status to that of lawful permanent resident.  Because Congress plainly intended for both processes to have the same result—and because Congress has, moreover, used the same phrase to identify that result across the two provisions—one can argue that reference to "adjustment of status" in § 1182(h) should apply to any provision in which an "adjustment of status" is actually achieved.

We do not, however, find it unreasonable to conclude that the phrase "adjustment of status" carries distinct meaning in these distinct sections of the

INA. Courts "normally presume" that words "carry the same meaning when they appear in different but related sections" of a statutory scheme, but this presumption may be rebutted by countervailing evidence of Congress's intent. *See, e.g.*, *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 536–38 (2013) (rejecting the presumption that words carry constant meaning where it produced "surprising consequences" that defied Congress's probable intent). While § 1255 and the Special Rule produce functionally equivalent results, their underlying processes—and the criteria required for relief—are meaningfully distinct.

On this point, it is valuable to recall that § 1182(h) specifically limits waiver relief to aliens who are "applying or reapplying for . . . adjustment of status." This language parallels that of § 1255, the main adjustment-of-status provision, which expressly requires direct application by the alien:

> The status of an alien . . . may be adjusted by the Attorney General, in his discretion . . . , to that of an alien lawfully admitted for permanent residence if (1) *the alien makes an application for such adjustment* . . . .

8 U.S.C. § 1255(a) (emphasis added). By contrast, an alien seeking cancellation of removal is, first and foremost, applying for *cancellation*; his adjustment of status cannot occur unless and until his removal is canceled. It is entirely plausible to conclude that, where § 1182(h) says it applies to aliens "applying or reapplying" for adjustment of status, it does not implicitly intend to cover aliens "applying or

reapplying" for cancellation of removal *and* the adjustment of status that follows as a matter of course.  *See Matter of Y-N-P-*, 26 I & N Dec. at 15 ("Congress did not include a 'cancellation of removal and adjustment of status proceeding' among the limited scenarios in which an alien may apply for such a waiver.").

Another counterargument to the BIA's interpretation relates to the inconsistency in language between the General Rule and the Special Rule.  As explained *supra*, the General Rule precludes cancellation of removal for any alien who has been "convicted" of a crime involving moral turpitude (among others), while the Special Rule grants relief as long as the alien is not "inadmissible" due to such a conviction.  Of course, § 1182(h) waives inadmissibility due to such a conviction; it does not nullify the underlying conviction itself.  Thus, one might argue, Congress intended to bar General Rule cancellation of removal for anyone convicted of a crime of moral turpitude while leaving Special Rule relief available to applicants with convictions who nonetheless are entitled to a waiver of their inadmissibility.

This argument has a certain facial appeal, but it is not dispositive of the question whether § 1182(h) is available in the unique context of the Special Rule.  Indeed, the BIA acknowledged this anomaly but concluded that it tells us less about Congress's intent than does the express reference to the Domestic Violence Waiver in Paragraph 5 of the Special Rule.  As the BIA explained, both the

27

Domestic Violence Waiver and the Special Rule were promulgated as part of the Violence Against Women Act of 1994. At the time Congress crafted these provisions, the § 1182(h) waiver had long been a part of the statutory framework. If Congress had believed that all statutory waivers of inadmissibility or deportability were automatically available to applicants for cancellation of removal, it would have had no reason to expressly incorporate the Domestic Violence Waiver into the Special Rule. The BIA found this point better grounded in the legislative history and the overall purpose of the Special Rule—and, on balance, more persuasive—than the bald observation that the General Rule says "convicted" while the Special Rule uses the term "inadmissible." We do not find this conclusion unreasonable.

Finally, the BIA explicitly acknowledged the "ameliorative purpose" of the Special Rule but concluded that this purpose did not require absolute leniency for aliens who have been convicted of crimes involving moral turpitude. Indeed, as compared with the General Rule, several subsections of the Special Rule offer significant leniency to those who are the victims of domestic abuse. Neither Arevalo nor the respondent in *Matter of Y-N-P-* persuasively argued that Congress's "ameliorative purpose" was not fully captured by those provisions.

Upon careful review of Arevalo's arguments and the BIA's discussion in *Matter of Y-N-P-*, we find that the BIA rationally and thoughtfully considered the

28

unique legal question before it and reasonably concluded that § 1182(h) is unavailable to applicants under the Special Rule. Having concluded that the operable statute is ambiguous as to the relief Arevalo seeks, and having found the BIA's interpretation thereof reasonable, we defer to it under *Chevron*. In short, we find reasonable the BIA's interpretation of § 1182(h) to conclude that Arevalo was not entitled to relief under the Special Rule due to his convictions for crimes of moral turpitude, and we therefore **DENY** Arevalo's petition for review.